2011 WY 113

**Michael Darren DOWNING,
Appellant (Defendant),**

v.

**The STATE of Wyoming,
Appellee (Plaintiff).**

**No. S–10–0128.**

Supreme Court of Wyoming.

July 25, 2011.

Representing Appellant: Donald L. Fuller and Ian K. Sandefer of Krampner, Fuller & Associates, L.L.C., Casper, Wyoming. Argument by Mr. Sandefer.

Representing Appellee: Bruce A. Salzburg, Wyoming Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Leda M. Pojman, Senior Assistant Attorney General. Argument by Ms. Pojman.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

VOIGT, Justice.

[¶ 1] After a jury trial, the appellant was convicted of one count of unlawful delivery of a controlled substance, morphine. He now appeals that conviction, challenging several district court rulings and the competence of defense counsel, and alleging prosecutorial misconduct, as well as cumulative error. We reverse and remand for a new trial.

## ISSUE

[¶ 2] The appellant presented ten issues for our review, but we will address only the single issue we find to be dispositive:

Did the district court abuse its discretion in prohibiting the appellant from producing evidence attacking the credibility of a confidential informant in support of the appellant's theory of the case?

## FACTS

[¶ 3] On November 12, 2008, a confidential informant (the CI) working with the Wyoming Division of Criminal Investigation (DCI), made a recorded telephone call to the appellant to arrange the illegal purchase of morphine pills. The CI was then given $1,800 in "buy money" and driven to JC's house, where the CI allegedly gave the buy money to the appellant in exchange for 18 morphine pills. Present at the house in addition to the appellant were JC and SM. The CI was "wired" during the transaction, but background noise diminished the quality of the recording. The buy money was not recovered because a search warrant was not immediately executed.

## DISCUSSION

[¶ 4] A district court's evidentiary rulings are reviewed on appeal under the following standard:

Evidentiary rulings are within the sound discretion of the trial court and include determinations of the adequacy of foundation and relevancy, competency, materiality, and remoteness of the evidence. This Court will generally accede to the trial court's determination of the admissibility of evidence unless that court clearly abused its discretion. We have described the standard of an abuse of discretion as reaching the question of the reasonableness of the trial court's choice. Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means exercising sound judgment with regard to what is right under the circumstances and without doing so arbitrarily or capriciously. In the absence of an abuse of discretion, we will not disturb the trial court's determination. The burden is on the defendant to establish such an abuse.

*Edwards v. State,* 2007 WY 146, ¶ 7, 167 P.3d 636, 637 (Wyo.2007) (quoting *Gabbert v. State,* 2006 WY 108, ¶ 24, 141 P.3d 690, 697 (Wyo.2006)).

[¶ 5] The appellant alleges that the district court abused its discretion by denying his pretrial motion seeking discovery of "other buys" in which the CI participated, and by excluding at trial evidence of other such buys. The appellant contends that these rulings prevented the jury from hearing relevant evidence of his theory of defense that the CI was "conning" DCI, prevented

the jury from hearing evidence that affected the CI's credibility, and violated this Court's prior rulings, discussed below, wherein we held that W.R.E. 403 and 404 were not to be used to prevent a criminal defendant from presenting a defense.

[¶ 6]  In *Edwards*, 2007 WY 146, ¶¶ 5, 10, 167 P.3d at 637, 639, we reversed an aggravated vehicular homicide conviction because the district court, on the ground that the evidence was "distracting and of little probative value," had not allowed Edwards to produce evidence of the victim's prior conduct, which conduct was relevant to the cause of the accident and to Edwards' defense.  We found that the rejected evidence was crucial to Edwards' defense and that Edwards had "advanced appropriate argument" as to its admissibility.  *Id.* at ¶ 10, 167 P.3d at 639. Specifically, we stated that "[W.R.E.] 403 does not extend to the exclusion of crucial evidence relevant to the central contention of a valid defense." *Id.* at ¶ 9, 167 P.3d at 638 (quoting *State v. Young*, 48 Wash.App. 406, 739 P.2d 1170, 1175 (1987)).  We also concluded that W.R.E. 404(b) was available to criminal defendants, just as it is to the State, where the evidence of a victim's prior conduct had a bearing on Edwards' theory of defense.  *Id.* at ¶ 10, 167 P.3d at 639.

[¶ 7]  In *Hensley v. State*, 2002 WY 96, ¶ 16, 48 P.3d 1099, 1105 (Wyo.2002), we reversed a drug delivery conviction because the district court had erred in determining that the State had not committed a *"Brady* violation" by withholding from Hensley evidence that was favorable to her in that it called the credibility of the State's CI into question.[1]  Citing *United States v. Bagley*, 473 U.S. 667, 678, 105 S.Ct. 3375, 3381, 87 L.Ed.2d 481 (1985), we stated that to prove a *Brady* violation, an appellant must show not only that the State withheld or suppressed evidence favorable to him or her, but that the evidence must be "material." *Hensley*, 2002 WY 96, ¶ 16, 48 P.3d at 1104.  The latter word has the following meaning in this context:

"*Bagley*'s touchstone of materiality is a 'reasonable probability' of a different result, and the adjective is important.  The question is **not** whether the defendant would **more likely than not** have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.  A 'reasonable probability' of a different result is accordingly shown when the government's evidentiary suppression 'undermines confidence in the outcome of the trial.' "

(Emphasis in original.)  *Id.* at ¶ 16, 48 P.3d at 1104–05 (quoting *Kyles v. Whitley*, 514 U.S. 419, 434, 115 S.Ct. 1555, 1566, 131 L.Ed.2d 490 (1995)).  The facts of *Hensley*, in relevant part, are almost identical to the facts of the present case;  the only evidence against Hensley was the CI's testimony and a bad tape recording.  We concluded that the undisclosed impeachment evidence was material, requiring reversal.

[¶ 8]  A brief review of the district court's handling of these matters may help place this case within the context of the law as stated. Several months before trial, the appellant filed a discovery demand pursuant to W.R.Cr.P. 16 and 26.2, and *Brady*.  Succinctly stated, the court rules require production of certain statements, reports and potential evidence, while *Brady* requires production of material exculpatory evidence.  Less than a month before trial, the appellant moved the district court to compel the State to produce detailed information as to other drug buys in which the CI had participated.  That motion was heard on August 3, 2009, and three days later the district court issued an order denying the motion with respect to discovery under the court rules, but granting it with specific reference to *Brady* and *Hensley*.

[¶ 9]  Despite the *Brady/Hensley* portion of its pretrial order, the district court sustained the State's objection during the trial when defense counsel attempted to inquire into the CI's "other buys."  Specifically, the district court ruled as follows:

THE COURT: Okay.  I'm going to sustain the objection.  My thought is that these other transactions are removed from the transaction that the jury needs to focus on.  You could get into all sorts of other

---

**1.**  *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct.  1194, 1196–97, 10 L.Ed.2d 215 (1963).

buys that he may have done, and I think it's going to distract the jury from focusing on whether there was or wasn't delivery of a controlled substance as alleged in this case. So I don't see the connection that [defense counsel] urges. And even if there is a probative connection, the potential for confusion by the jury I think is too great. They'll end up being removed from focusing on the case at issue here, so I'll sustain the objection.

[¶ 10] The appellant's theory of defense was that he was "set up" by the CI, who was, in effect, making a living off "conning" DCI.[2] While the parties have briefed and argued this issue primarily as a *Brady* and *Hensley* issue, it is much more akin to the issue raised in *Dysthe v. State*, 2003 WY 20, 63 P.3d 875 (Wyo.2003), where we reversed a conviction for delivery of a controlled substance because the district court abused its discretion in both precluding the appellant from presenting testimony from two late-identified witnesses, and in precluding the appellant from cross-examining a State witness. *Id.* at ¶¶ 9, 21, 63 P.3d at 881, 884. In reversing Dysthe's conviction, we noted "that wide latitude should be permitted in the cross-examination of an adverse witness," and that "the constitutional right to confront witnesses may even require the trial court to allow cross-examination that goes beyond the scope of direct examination to test credibility." *Id.* at ¶ 19, 63 P.3d at 883. Of particular importance to the reversal in *Dysthe* was the fact that "the State's case was based solely on the credibility of its witnesses." *Id.* at ¶ 21, 63 P.3d at 884.

[¶ 11] "The primary right secured by the Confrontation Clause of the United States and Wyoming Constitutions is the right of cross-examination." *Miller v. State*, 2006 WY 17, ¶ 8, 127 P.3d 793, 796 (Wyo. 2006). We recently described the state of

the law as it relates to an alleged abridgement of this right:

> The constitutional right to confront a witness arises under the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Wyoming Constitution. A district court's limitation on a defendant's constitutional right to confrontation is a question of law which we review *de novo*. *Hannon v. State*, 2004 WY 8, ¶ 11, 84 P.3d 320, 328 (Wyo.2004). Restrictions on a defendant's right to confront witnesses are subject to harmless error analysis. *Id.* We have previously addressed the application of the harmless error standard of review to an alleged abridgment of the right to cross-examine a witness as follows:

>> [T]he correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt. Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

> *Id.* at ¶ 25, 84 P.3d at 332–33 (quoting *Olden v. Kentucky*, 488 U.S. 227, 232–33, 109 S.Ct. 480, 483–84, 102 L.Ed.2d 513 (1988)).

> We recently summarized the limits that a court may properly place upon cross-examination:

>> .... In order for there to be a violation of the right of confrontation, a de-

---

**2.** Specifically, the appellant contended that no transaction had occurred between him and the CI, but that the CI had hidden the "buy money" in the house and had taken the appellant's morphine pills from the bathroom. In addition, the police reports covering this controlled buy apparently revealed that the CI had dropped the pills after leaving the house and before returning to the surveilling officers. Defense counsel wanted to probe an allegation that the same thing had occurred during another controlled buy, and that a pill had come up missing. Defense counsel wanted to show a pattern of conduct that suggested the CI was using the controlled buys for his own purposes.

fendant must show more than just a denial of the ability to ask specific questions of a particular witness. Rather, a defendant must show that he was prohibited "from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness ... 'to expose to the jury the facts from which jurors ... could appropriately draw inferences relating to the reliability of the witness.'" *Hannon*, ¶ 18, 84 P.3d at 330 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 680, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986)). The Confrontation Clause guarantees a defendant an **"opportunity** for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defendant might wish." *Van Arsdall*, 475 U.S. at 679, 106 S.Ct. at 1435 (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S.Ct. 292, 295, 88 L.Ed.2d 15 (1985) (*per curiam* ) (emphasis in original)). A defendant's right to cross-examination of a witness is not unfettered, but is subject to the trial court's "discretion to reasonably limit cross-examination to prevent, among other things, questioning that is repetitive or of marginal relevance." *Hannon*, ¶ 22, 84 P.3d at 331–32 (quoting *United States v. DeSoto*, 950 F.2d 626, 629–30 (10th Cir.1991)); *see also Olden v. Kentucky*, 488 U.S. 227, 232, 109 S.Ct. 480, 483, 102 L.Ed.2d 513 (1988) (*per curiam* ).

*Miller v. State*, 2006 WY 17, ¶ 8, 127 P.3d 793, 796 (Wyo.2006) (some citations omitted; emphasis in original). Thus, a district court may reasonably limit a defendant's right to cross-examination without abridging his Sixth Amendment right to confrontation. *See Id.* at ¶¶ 7–13, 127 P.3d at 796–97; *Jensen v. State*, 2005 WY 85, ¶¶ 7–13, 116 P.3d 1088, 1091–1093 (Wyo.2005);

*Schmidt v. State*, 2001 WY 73, ¶ 30, 29 P.3d 76, 85–86 (Wyo.2001).

*Budig v. State*, 2010 WY 1, ¶¶ 7–8, 222 P.3d 148, 151–52 (Wyo.2010) (footnote omitted).

[¶ 12] Stated succinctly: we reversed in *Edwards* because the district court applied W.R.E. 403 balancing to exclude evidence relevant to the theory of defense; we reversed in *Hensley* because of undisclosed impeachment evidence concerning a CI; and we reversed in *Dysthe*, at least in part, because the district court prohibited the defendant from cross-examining a State witness where the State's case relied heavily on that witness's credibility. We cannot distinguish those cases from the present case. If we assume that the "damaging potential" of the proposed cross-examination was realized; that is, if we assume that cross-examination of the CI would have tended to prove that he was "conning" DCI, we cannot say that prohibiting the cross-examination was harmless error beyond a reasonable doubt. The jury may well have drawn negative inferences from such cross-examination, leading to a different verdict. As we said in *Hannon v. State*, "[c]ounsel should be allowed to 'expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness.'" 2004 WY 8, ¶ 22, 84 P.3d 320, 331–32 (Wyo.2004) (quoting *United States v. DeSoto*, 950 F.2d 626, 629 (10th Cir.1991)). The conviction must be reversed, and the case remanded for a new trial on that basis.[3]

---

3. This ruling does not prohibit the district court from exercising its discretion in a reasonable manner to prevent the disclosure of sensitive information, such as information that would compromise an on-going investigation, so long as such ruling does not unduly infringe upon a defendant's constitutional right to confront witness through cross-examination.