# IN THE SUPREME COURT, STATE OF WYOMING

# 2020 WY 29

OCTOBER TERM, A.D. 2019

March 3, 2020

JOSEPH D. LAJEUNESSE,

Appellant
(Defendant),

v.

S-19-0024

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Campbell County*
*The Honorable Michael N. Deegan, Judge*

*Representing Appellant:*
    Robert J. O'Neil, Robert J. O'Neil, PC, Gillette, Wyoming. Argument by Mr. O'Neil.

*Representing Appellee:*
    Bridget Hill, Wyoming Attorney General; Jenny L. Craig, Deputy Attorney General; Christyne M. Martens, Senior Assistant Attorney General; Timothy P. Zintak, Assistant Attorney General. Argument by Mr. Zintak.

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**GRAY, Justice.**

[¶1]   Joseph LaJeunesse was convicted of two counts of sexual intrusion on a victim under Wyo. Stat. Ann. § 6-2-314(a)(i) (actor sixteen or older and victim under thirteen). He appeals his convictions claiming the district court improperly admitted testimony of other wrongs or acts under W.R.E. Rule 404(b) and improperly admitted testimony about the victim's earlier statements to a forensic interviewer under W.R.E. Rule 801(d)(1)(B). He also contends the district court erred in allowing the State to amend the charging documents at the end of the State's presentation of evidence, and this error denied him the opportunity to effectively cross-examine witnesses in violation of the Confrontation Clause of the United States and Wyoming Constitutions.  We affirm.

## ISSUES

[¶2]   The issues are:

1.      Did the district court err when it admitted W.R.E. Rule 404(b) evidence at trial?

2.      Did the district court err when it admitted testimony under W.R.E. Rule 801(d)(1)(B) at trial?

3.      Did the district court err when it allowed the State to amend the Felony Information after the State had presented its witnesses?

## FACTS

[¶3]   In 2015, when C.L. was seven years old, she, her parents, and her three siblings moved from Colorado to Gillette, Wyoming.  The family lived with Mother's parents in a two-bedroom apartment on Stanley Street.  C.L. lived in the apartment until May 31, 2016, when she was taken into custody by the Department of Family Services for reasons unrelated to this appeal.

[¶4]   During two forensic interviews conducted while C.L. was in State custody, C.L. described times where her father, Mr. LaJeunesse, initiated sexual contact with her. These events occurred after the family moved from Colorado to Stanley Street.  The first incident occurred when C.L. was taking a shower.  She reported that Mr. LaJeunesse entered the bathroom, shut the door, and knelt by the tub.  He then licked C.L.'s vaginal area.  The second incident occurred while C.L. was taking a nap.  Her father climbed onto the top bunk bed where C.L. was resting.  He removed her pajama bottoms and underwear, and "[p]ut his private in [her] bottom."

1

[¶5]   An arrest warrant was issued for Mr. LaJeunesse on January 31, 2017, charging him with two counts of first-degree sexual abuse of a minor under Wyo. Stat. Ann. § 6-2-314(a)(i), (c).  After a three-day trial, a jury found Mr. LaJeunesse guilty of both counts. The district court sentenced him to not less than thirty years in prison on each count to run consecutively.  Mr. LaJeunesse timely appeals.

**Procedural History**

[¶6]   Prior to trial, the State notified Mr. LaJeunesse it would seek admission of W.R.E. Rule 404(b) evidence.  The State planned to present testimony from Mr. LaJeunesse's three adult nieces about sexual encounters with Mr. LaJeunesse when the nieces were children in the late 1990s.[1]  Mr. LaJeunesse objected, claiming the proposed 404(b) evidence was not offered for a proper purpose under the rule, and it was more prejudicial than probative.  The district court heard arguments and received exhibits on the question of the admissibility of this evidence.  It found that, although a close call, the probative value of the evidence outweighed the potential for unfair prejudice—"provided the State limits the testimony of the nieces so as to prevent it from becoming unnecessarily cumulative."  It then admitted the testimony of these witnesses for the purpose of establishing motive as allowed by the rule.  The district court ordered that a limiting instruction be given to the jury prior to the testimony at trial and required the parties to stipulate to an instruction or to propose their own.  On appeal, Mr. LaJeunesse claims the alleged incidents were inadmissible because they were too remote in time and dissimilar from the current charges.

[¶7]   Mr. LaJeunesse also objected to the district court's admission of the testimony of forensic examiner, Brandi Tonkel, about statements made by C.L. during forensic interviews.  After defense counsel made opening statement and C.L. had testified, the State moved to admit Ms. Tonkel's testimony as evidence of C.L.'s prior consistent statements under W.R.E. Rule 801(d)(1)(B).  Mr. LaJeunesse argued neither the defense opening statement or cross-examination of C.L. raised an express or implied charge that C.L.'s testimony was the result of recent fabrication, improper influence, or motive.  The district court allowed the testimony, and Mr. LaJeunesse renews his argument on appeal.

[¶8]   At the close of the State's presentation of evidence, the State moved to amend the dates set forth in the Felony Information.  The Felony Information originally alleged the crimes occurred between December 1, 2015, and May 31, 2016, based on information provided by C.L.'s grandmother.  The State later learned from C.L.'s grandfather that C.L. and her family took up residence in the Stanley apartment around March 10, 2015. The State moved to amend the Information to conform to the evidence presented at trial.

---

[1] The State moved to present additional Rule 404(b) evidence, but the district court denied admission unless Mr. LaJeunesse raised a lack of intent as part of his defense.

At trial, Mr. LaJeunesse objected, claiming an amendment at this stage of the trial prevented him from bringing alibi witnesses for the expanded period of time and violated his due process right to notice of the charges against him. He asked for a continuance. The district court denied Mr. LaJeunesse's request for a continuance and allowed the amendment. On appeal, Mr. LaJeunesse abandons his argument relating to alibi witnesses. He claims the amendment was untimely, and he was substantially prejudiced because it denied him the opportunity to effectively cross-examine C.L. and Ms. Tonkel, the only two substantive witnesses at trial.

## STANDARD OF REVIEW

[¶9] In his first two issues, Mr. LaJeunesse contends the district court erred when it admitted testimony under W.R.E. Rules 404(b) and 801(d)(1)(B). This Court reviews alleged errors in the admission of evidence for an abuse of discretion. *Hutchinson v. Taft*, 2010 WY 5, ¶ 27, 222 P.3d 1250, 1257 (Wyo. 2010). "Determining whether the trial court abused its discretion involves the consideration of whether the court could reasonably conclude as it did, and whether it acted in an arbitrary and capricious manner." *Ortiz v. State*, 2014 WY 60, ¶ 67, 326 P.3d 883, 897 (Wyo. 2014) (citations omitted). "A trial court's evidentiary rulings are entitled to considerable deference, and will not be reversed so long as there exists a legitimate basis for the trial court's ruling." *Id.* (citation and internal quotation marks omitted).

### I.    Did the district court err when it admitted W.R.E. Rule 404(b) evidence at trial?

[¶10] Mr. LaJeunesse claims the district court abused its discretion when it allowed testimony alleging earlier acts of sexual abuse of his nieces when they were children under W.R.E. Rule 404(b). This rule provides:

> (b) *Other crimes, wrongs, or acts.*—Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . .

W.R.E. Rule 404(b). District courts apply a mandatory test in determining the admissibility of W.R.E. Rule 404(b) evidence:

> (1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the probative value of the evidence must not be substantially outweighed by its potential for unfair prejudice; and (4) upon request, the trial court must

3

instruct the jury that the similar acts evidence is to be considered only for the proper purpose for which it was admitted.

*Griggs v. State*, 2016 WY 16, ¶ 128, 367 P.3d 1108, 1143 (Wyo. 2016) (citations omitted).

[¶11] "In *Gleason* [*v. State*, 2002 WY 161, ¶ 30, 57 P.3d 332, 343 (Wyo. 2002),] we set forth factors that the district court must examine to determine the admissibility of 404(b) evidence, and we required the court to articulate its findings." *Garrison v. State*, 2018 WY 9, ¶ 11, 409 P.3d 1209, 1213 (Wyo. 2018). We do not require the trial court to make express findings on each factor. *Gleason v. State*, 2002 WY 161, ¶ 28, 57 P.3d 332, 343 (Wyo. 2002). These *Gleason* factors are:

> 1. How clear is it that the defendant committed the prior bad act?
>
> 2. Does the defendant dispute the issue on which the state is offering the prior bad acts evidence?
>
> 3. Is other evidence available?
>
> 4. Is the evidence unnecessarily cumulative?
>
> 5. How much time has elapsed between the charged crime and the prior bad act?
>
> . . . The trial court should [then] weigh [the following] factors against the probative value of the evidence:
>
> 1. The reprehensible nature of the prior bad act. The more reprehensible the act, the more likely the jury will be tempted to punish the defendant for the prior act.
>
> 2. The sympathetic character of the alleged victim of the prior bad act. Again, the jury will be tempted to punish the defendant for the prior act if the victim was especially vulnerable.
>
> 3. The similarity between the charged crime and the prior bad act. The more similar the acts, the greater is the likelihood that the jury will draw the improper inference that if the defendant did it once, he probably did it again.

4

4. The comparative enormity of the charged crime and the prior bad act. When the prior act is a more serious offense than the charged crime, the introduction of that act will tend to place the defendant in a different and unfavorable light.

5. The comparable relevance of the prior bad act to the proper and forbidden inferences. Evidence of the prior bad act may be much more probative of bad character than it is of any legitimate inference permitted by Rule 404(b).

6. Whether the prior act resulted in a conviction. The jury may be tempted to punish the defendant if they believe he escaped punishment for the prior bad act.

*Gleason*, ¶ 27, 57 P.3d at 342–43 (citations omitted).

[¶12] "This analysis is intended to be conducted by the trial court, and we do not apply it anew on appeal." *Mayhew v. State*, 2019 WY 38, ¶ 27, 438 P.3d 617, 624 (Wyo. 2019). "Our role is to determine whether the trial court abused its discretion in considering the required factors." *Id.*

[¶13] Mr. LaJeunesse concedes the district court made detailed findings on each factor but argues the court's conclusion was unreasonable as a matter of law. Among other things, he points to the difference in Mr. LaJeunesse's age (at the time of the previous conduct he was in his teens and the current charges arose when he was in his thirties); in the ages of his alleged victims (two nieces testified the incidents began when they were four or five years old and continued over a period of years; here C.L. was seven); and in approach (he threatened the nieces if they told anyone, when C.L. was not threatened). Finally, Mr. LaJeunesse argues he was never charged for any contact with his nieces.

[¶14] The district court's *Gleason* analysis noted all the distinctions raised by Mr. LaJeunesse. Balancing the probative value of the evidence versus the potential prejudice, the district court determined the relevance of the uncharged misconduct to motive was high, but "the chance [that] the fact finder may draw [a] forbidden inference [was] also high." The district court concluded:

> The uncharged misconduct evidence clearly possesses probative value with respect to the properly identified purposes. It helps to illuminate Defendant's motive should he deny any wrongdoing or to establish his knowledge and intent or lack of accident/mistake should he assert he did the physical act in question but without the requisite intent or

5

knowledge or that he did the act but it was accidental or inadvertent. And, although it is a close call, the court finds the probative value is not substantially outweighed by the potential for unfair prejudice – provided the State limits the testimony of the nieces so as to prevent it from becoming unnecessarily cumulative.

[¶15] We find no abuse of discretion in the district court's ruling. "Motive is generally defined as that which leads or tempts the mind to indulge in a particular act." *Mayhew*, ¶ 31, 438 P.3d at 627 (citing *Swett v. State*, 2018 WY 144, ¶ 39, 431 P.3d 1135, 1146 (Wyo. 2018)). "Although motive is not an element of any charged crime, it is an intermediate fact that the prosecution is permitted to prove." *Mayhew*, ¶ 31, 438 P.3d at 627. "Motive becomes particularly important in child sex abuse cases where the accused denies any wrongdoing, thereby creating an 'evidentiary conflict' between himself and the victim." *Winters v. State*, 2019 WY 76, ¶ 82, 446 P.3d 191, 216 (Wyo. 2019); *Elliott v. State*, 600 P.2d 1044, 1048 (Wyo. 1979); *see also Griggs*, ¶ 131, 367 P.3d at 1143–44 (recognizing "motive to sexually abuse children" as proper use of other acts evidence).

[¶16] Our holding in *Winters* controls the resolution of Mr. LaJeunesse's claims. In *Winters*, the defendant also argued there were "no factual similarities" between the charges at hand and his prior sexual misconduct. *Winters*, ¶ 83, 446 P.3d at 217. Similar to Mr. LaJeunesse's argument, the defendant in *Winters* further argued the prior misconduct was "too remote in time"—over twenty years—to be relevant and probative to his present motive. We rejected those arguments, stating "[d]espite these dissimilarities, the other acts . . . and the charged crimes both involved a key similarity: Mr. Winters sexually abusing prepubescent children . . . . [B]oth involved the same class of victims and both reflect [the defendant's] sexual preference for prepubescent children."[2] *Winters*, ¶¶ 84–85, 446 P.3d at 217 (quoting *Mayhew*, ¶ 35, 438 P.3d at 628)

---

[2] "This Court has consistently held that 'sexual behavior with a defendant's minor children, adopted children, or stepchildren is unusual sexual behavior permitting admission of uncharged misconduct evidence to prove motive when the accused denies that the charged conduct ever occurred.'" *Mayhew*, ¶ 31, 438 P.3d at 627 (citing *Swett*, ¶ 40, 431 P.3d at 1146); s*ee also McDowell v. State*, 2014 WY 21, ¶ 28, 318 P.3d 352, 361 (Wyo. 2014); *Brower v. State*, 1 P.3d 1210, 1214 (Wyo. 2000); *Gleason*, ¶ 19, 57 P.3d at 340–41; *Rigler v. State*, 941 P.2d 734, 738 (Wyo. 1997) (in child sexual abuse case, evidence of similar previous misconduct with different victim admissible to prove modus operandi, preparation, plan, intent, and credibility of victim); *Daniel v. State*, 923 P.2d 728, 734–35 (Wyo. 1996) (in prosecution for indecent liberties, testimony of six other children about sexual activities with defendant admissible to prove course of conduct); *Jackson v. State*, 891 P.2d 70, 75–76 (Wyo. 1995) (victim's testimony of prior sexual acts by defendant's stepfather admissible in indecent liberties case as proof of motive, course of conduct, and credibility of victim); *Johnson v. State*, 872 P.2d 93, 95–98 (Wyo. 1994) (in indecent liberties case, testimony of social worker that defendant had admitted previous sexual molestation of a ten-year-old girl admissible to prove motive, intent, and identity); *Mitchell v. State*, 865 P.2d 591, 598–99 (Wyo. 1993) (in trial for second-degree sexual assault of a ten-year-old girl, defendant's admission of

(internal quotation marks omitted). We noted the amount of time between the prior and current misconduct is not limited by an arbitrary number of years. *Winters*, ¶ 85, 446 P.3d at 217; *see also Griswold v. State*, 994 P.2d 920, 926 (Wyo. 1999) ("[R]emoteness may affect the weight of the evidence rather than its admissibility."). Rather, "[t]he question is 'one of reasonableness' considering 'the context in which the evidence was introduced and the theory supporting its admissibility.'" *Winters*, ¶ 85, 446 P.3d at 218 (citing *Hart v. State*, 2002 WY 163, ¶ 24, 57 P.3d 348, 356 (Wyo. 2002)).

[¶17] In this case, the district court determined the evidence was probative and relevant to motive and gave a limiting instruction to the jury prior to the nieces' testimony. The testimony was succinct and not cumulative. The district court did not abuse its discretion in deciding the earlier acts testimony was admissible.

## II.    Did the district court err when it admitted testimony under W.R.E. Rule 801(d)(1)(B) at trial?

[¶18] The State moved to admit prior statements made by C.L. during interviews with Ms. Tonkel where C.L. identified her father as the perpetrator of the charged sexual contact. Mr. LaJeunesse objected, claiming the testimony was inadmissible hearsay and did not fall within any exception under W.R.E. Rule 801(d)(1)[3] because he had not implied C.L. was fabricating her accusations against him, or that she was improperly influenced, or had an improper motive. The district court disagreed, finding the defense opening statement had established the predicate for admission of the testimony. Mr. LaJeunesse claims the district court's conclusion is error.

[¶19] "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." W.R.E. Rule 801(c). W.R.E. Rule 802, generally, proscribes admission of hearsay. However,

---

sexual arousal during prior sexual activity with a three-year-old niece, for which the defendant was convicted, admissible to prove motive); *Gezzi v. State*, 780 P.2d 972, 977–78 (Wyo. 1989) (in prosecution for indecent liberties with daughter, testimony of older daughter as to similar misconduct with her admissible to prove defendant's motive and victim's credibility); *Brown v. State*, 736 P.2d 1110, 1113 (Wyo. 1987) (in prosecution for incest, testimony by victim and her half-sister implicating defendant in prior sexual abuse admissible because aberrant sexual behavior is probative of motive); and *Elliott*, 600 P.2d at 1048–49 (in trial for second-degree sexual assault, testimony of victim's older sister as to similar misconduct by defendant with her admissible to prove motive based on pedophilia).
[3] W.R.E. Rule 801(d)(1)(B) provides:

> (d) *Statements which are not hearsay.*—A statement is not hearsay if:
> (1) Prior Statement by Witness.—The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . (B) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive . . . .

7

W.R.E. Rule 801(d)(1)(B) allows a statement to be admitted at trial if it is a prior consistent statement that meets four requirements:

> (1) that the declarant testify at trial; (2) that the declarant be subject to cross-examination concerning the prior statement; (3) that the prior statement be consistent with the declarant's trial testimony; and (4) that the prior statement be offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive.

*Jones v. State*, 2019 WY 45, ¶ 15, 439 P.3d 753, 757–58 (Wyo. 2019) (citing *Griggs*, ¶ 98, 367 P.3d at 1136) (quoting *Lancaster v. State*, 2002 WY 45, ¶ 17, 43 P.3d 80, 88 (Wyo. 2002), *overruled by Jones*, ¶ 17, 439 P.3d 753 at 758).

[¶20] Mr. LaJeunesse concedes the first three of these requirements were met. He argues the fourth requirement was not and that the district court erred when it determined the defense's opening statement accused C.L. of recent fabrication, improper influence, or improper motive.

[¶21] In its opening statement, defense counsel told the jury about a person Mr. LaJeunesse had met through his church and who then "betrayed" him. Counsel explained that, if Mr. LaJeunesse were to testify, he would tell them about this other person and that Mr. LaJeunesse felt terrible remorse because he failed to protect C.L. from this person.[4] Counsel ended with:

> And you will hear testimony from [C.L.], and it will be disturbing, to say the least. It will upset you. I would expect it to upset you. [C.L.] would be a sympathetic witness, and she deserves our sympathy after what [another adult] did to her. But whether she deserves our sympathy and whether she's a credible witness about what Mr. LaJeunesse is accused of doing are two entirely different things. And after cross-examining her, you will conclude that it is not to be believed to the required standard, beyond a reasonable doubt. . . .
> But there are a couple of things that I would like to make clear to you about [C.L.] at this time. We are not saying that [C.L.] has recently fabricated or made up these allegations against her dad. We do not know at this time, and

---

[4] Mr. LaJeunesse did not testify at trial, and this person was not referred to by any witness after opening statements.

8

[we] are not saying that she has been improperly influenced or has an improper motive for her testimony. These questions are for you to decide after all the evidence has been presented . . . .

[¶22] With respect to the defense opening statement, the district court reasoned:

Defense counsel basically read the Rule out of the Rule book, essentially, in his opening remarks, telling the jury that the defense was not taking the position that the testimony of the alleged victim was offered to rebut an express or implied charge against her. They were not asserting that she was recently fabricating, or was acting under an improper influence or motive. But [counsel] made the remark, "That's up to you, the jury." That, in and of itself, posits that possibility to the jury, and thus makes the assertion that the jury might consider that this young lady is testifying, or was going to testify as she did, exactly because she was fabricating or subject to improper influence or motive. . . .

In addition, in opening remarks we had this, these vague allusions to [the other person]; and to be sure that wasn't sharpened up, but nonetheless, in my view, the specter was presented of this evil figure, [the other person], who somehow had inclined this child to get on the stand and testify as she did against her father; that it wasn't her father, it was somehow out of the genesis of [the other person]. And that, as well, in my mind amounts to a charge against her of fabrication or improper influence or motive.

[¶23] Based on the defense's opening statement, the district court allowed Ms. Tonkel to testify about C.L.'s disclosures during the interviews. In a November 2016 interview, Ms. Tonkel testified that C.L. divulged that "she was in the shower [and] her father had stuck his tongue out a little bit and licked her potty with his tongue." Following this disclosure, Ms. Tonkel showed C.L. an anatomical drawing. C.L. indicated her "potty" was her vagina. C.L. said this incident occurred after the family had moved back to Gillette. Ms. Tonkel further testified that at a second interview in January 2017, C.L. did not make a verbal statement. Instead she wrote a note that said, "He put His privit in butum." Again, using the anatomical drawing, C.L. indicated "privit" was her father's penis and "butum" was her buttocks. C.L. related this incident also occurred after moving back to Gillette from Colorado.

[¶24] "Trial courts must be cautious lest they allow admission of prior consistent statements any time a victim's credibility is questioned" because a defense to the crime of

sexual abuse of a minor "will necessarily entail a defense theory that what the victim said happened did not happen." *Jones*, ¶ 24, 439 P.3d at 761. "That alone does not open the door for admission of prior consistent statements." *Id.* However, "[t]he charge of fabrication or improper motive need not come only as a specific allegation during cross-examination; . . . it may be made by implication or innuendo, and it may be found in the 'thrust' of the defenses and testimony presented." *Lancaster*, ¶ 18, 43 P.3d at 89.

[¶25] "[T]he district court enjoys considerable latitude and broad discretion with respect to the admission or exclusion of evidence." *Odegard v. Odegard*, 2003 WY 67, ¶ 22, 69 P.3d 917, 924 (Wyo. 2003). "We defer to a trial court's determination and will not disturb the ruling if there is a legitimate basis for it." *Gonzalez-Chavarria v. State*, 2019 WY 100, ¶ 11, 449 P.3d 1094, 1097 (Wyo. 2019). We find the district court's determination to be reasonable.

[¶26] Although the defense did not *directly* maintain C.L. was fabricating or had been improperly influenced, the jury was invited to consider this possibility. We see no reason why the defense would quote W.R.E. Rule 801(d)(1)(B) in such a manner except to place this exact consideration before the jury. In closing remarks, Mr. LaJeunesse's counsel made explicit what was implicit in the opening statement. He argued, as "sympathetic" as C.L. was, "that doesn't mean that what she said on the stand [was] anything more than what had been planted in her mind with the months and months and months of being in State custody." The district court did not abuse its discretion in allowing C.L.'s prior consistent statements.[5]

### III. Did the district court err when it allowed the State to amend the Felony Information after the State had presented its witnesses?

[¶27] Mr. LaJeunesse contends the district court erred in allowing the State to amend the dates of the charges in the Felony Information after the presentation of the State's evidence and without granting a continuance. The objections raised by Mr. LaJeunesse at trial were based exclusively upon the State's delay in seeking an amendment and his inability to call an alibi witness—an argument not raised on appeal—for the broadened

---

[5] In this case, the precise source and timing of the alleged fabrication or improper influence was not identified. In Wyoming, W.R.E. Rule 801(d)(1)(B) does not require that prior consistent statements be made before the alleged improper motive arose, because "there is an inherent difficulty in determining when an improper motive may have arisen[.]" *Jones*, ¶ 16, 439 P.3d at 758 (quoting *Makinen v. State*, 737 P.2d 345, 349 (Wyo. 1987)). However, a prior consistent statement made after the alleged corrupting influence "may be used only for rehabilitation . . . and not as affirmative evidence." *Montoya v. State*, 822 P.2d 363, 367 (Wyo. 1991). When admitting evidence for the purpose of rehabilitation, "a limiting instruction must be given, if requested[.]" *Id.* The district court did not admit Ms. Tonkel's reiteration of C.L.'s disclosures as substantive evidence and provided a limiting instruction to the jury.

time period. On appeal, Mr. LaJeunesse claims the amendment of the Information was untimely and violated his rights under the Confrontation Clause.

## A.    Due Process

### *STANDARD OF REVIEW*

[¶28] Wyoming Rule of Criminal Procedure 3(e) gives discretion to a trial judge in deciding whether a motion to amend an information should be granted. *Albarran v. State*, 2013 WY 111, ¶ 11, 309 P.3d 817, 820 (Wyo. 2013). We review the trial court's decision applying our abuse of discretion standard. *See supra* ¶ 10. We also have "consistently held that the granting of a motion for continuance is within the discretion of the trial court" and our review, therefore, "is limited to determining whether the trial court abused its discretion by denying the continuance." *Young v. State*, 2005 WY 136, ¶ 9, 121 P.3d 145, 147 (Wyo. 2005) (citing *In re CC*, 2004 WY 167, ¶ 23, 102 P.3d 890, 897 (Wyo. 2004); *Roose v. State*, 753 P.2d 574, 578 (Wyo. 1988); and *Gentry v. State*, 724 P.2d 450, 451 (Wyo. 1986)).

[¶29] "An accused has a constitutional right to notice of the charges against him to allow him a fair opportunity to defend against the charges" under the United States Constitution, Sixth Amendment and Wyoming Constitution, Article 1, § 10.[6] *Spagner v. State*, 2009 WY 12, ¶ 10, 200 P.3d 793, 798–99 (Wyo. 2009). When an accused's constitutional right to notice of criminal charges is at issue, the determination on the adequacy of notice is a question of law, which we review de novo. *Id.*

### *DISCUSSION*

[¶30] Mr. LaJeunesse argues the district court erred in allowing the State to amend the dates of the Felony Information from "on or between December 1, 2015" to "on or between March 10, 2015" after the State had called its witnesses. Defense counsel objected and requested a continuance, claiming the State had known the basis for the amendment for over a month before trial began but waited until after the presentation of the State's evidence before seeking the change. Mr. LaJeunesse claimed the amendment would violate his due process rights because it would "chang[e] the nature of the charges against him by expanding the time period." The district court found there was no additional or different offense charged and the offenses were always alleged to have

---

[6] Mr. LaJeunesse has presented no analysis to support an independent examination of the Wyoming Constitution's due process or confrontation provisions. Therefore, we will not apply a separate analysis inconsistent to the federal constitution. *Sheesley v. State*, 2019 WY 32, ¶ 16, 437 P.3d 830, 838 (Wyo. 2019); *Bear Cloud v. State*, 2014 WY 113, ¶ 14, 334 P.3d 132, 137 (Wyo. 2014).

occurred after C.L. returned from Denver with her family. The district court allowed the amendment and denied the request for a continuance.[7]

[¶31] Motions to amend an information are governed by W.R.Cr.P. Rule 3(e), which states:

> (e) *Amendment of information or citation.*—Without leave of the court, the attorney for the state may amend an information or citation until five days before a preliminary examination in a case required to be tried in district court or until five days before trial for a case not required to be tried in district court. The court may permit an information or citation to be amended:
>> (1) With the defendant's consent, at any time before sentencing.
>> (2) Whether or not the defendant consents:
>>> (A) At any time before trial if substantial rights of the defendant are not prejudiced.
>>> (B) **At any time before verdict or finding if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced.**

(Emphasis added.) The amendment to the Information occurred before the verdict, and therefore W.R.Cr.P. Rule 3(e)(2)(B) controls. *See Jones v. State*, 2009 WY 33, ¶ 16, 203 P.3d 1091, 1095–96 (Wyo. 2009). As a result, we limit our analysis to whether Mr. LaJeunesse's substantial rights were prejudiced.[8]

---

[7] To the extent Mr. LaJeunesse claims the denial of a continuance was error, his argument must fail. He argues:

> There are too numerous cases to mention in which it was held by the Wyoming Supreme Court that when counsel claims "surprise," that the remedy is to ask for – *and be granted* – a continuance to be able to meet and defend the "surprise," whatever that "surprise" may happen to be in the particular case at bar.

He fails to cite one case so holding. We have held: "If continuances are granted upon demand, 'great and unwarranted delays would be experienced in the administration of justice.'" *Gentry*, 724 P.2d at 452 (citation omitted). "The trial court is in the best position to evaluate all relevant factors affecting requests for continuances—balancing individual interests against unnecessary postponements." *Id.* As discussed *infra* ¶ 33–34, Mr. LaJeunesse does not demonstrate that denial of the continuance affected his substantial rights, and the district court did not abuse its discretion by denying the motion.

[8] On appeal, Mr. LaJeunesse urges this Court to adopt a "structural defect" analysis, removing the need for showing prejudice, when the amendment of an information is requested after the State has presented its witnesses. "The purpose of the structural error doctrine is to ensure insistence on certain basic,

[¶32] An information must "(1) contain the elements of the offense charged; (2) fairly inform a defendant of the charges against which he must defend; and (3) enable a defendant to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Spagner*, ¶ 10, 200 P.3d at 799 (citing *Estrada-Sanchez v. State*, 2003 WY 45, ¶ 13, 66 P.3d 703, 708 (Wyo. 2003)). "A detailed affidavit attached to the information may provide some of this information." *Spagner*, ¶ 10, 200 P.3d at 799.

[¶33] The facts in this case are nearly identical to those in *Spagner*. In *Spagner*, the defendant was accused of multiple counts of sexual assault on a minor, including one count in 2004 while she was living with her grandmother. *Id.* ¶ 4, 200 P.3d at 795. After the State had presented its case, the defendant moved for a judgment of acquittal on the count alleged to have occurred in 2004, because testimony from the grandmother at trial established the minor had not moved in with her until 2005. *Id.* ¶ 19, 200 P. 3d at 801. We upheld the district court's decision to grant the amendment because the charges in the Information were "in the words of the respective statutes" which "fairly informed [the defendant] of the charges against which he must defend," and the State would be "precluded from further prosecuting the appellant for any sexual assault crimes against this victim during the full time period alleged." *Id.* ¶ 12, 200 P. 3d at 799 (citation omitted). We concluded:

> Finally, we note that Wyoming follows the rule that the sufficiency of an information is determined from a broad and enlightened standpoint of right reason rather than from a narrow view of technicality and hairsplitting. The key is whether the defendant has been misled to his prejudice. Here, where the Affidavit attached to the Information clearly indicated that the sexual assaults began after the appellant moved into the victim's grandmother's house, the appellant was not misled by a general date statement that included periods before he moved into the house. Beyond that, the lack of factual specificity goes not to the constitutional adequacy of the notice, but to the credibility of the State's case.

*Id.* ¶ 13, 200 P.3d at 799 (internal citations and quotation marks omitted).

---

constitutional guarantees that should define the framework of any criminal trial." *Sorensen v. State*, 2019 WY 80, ¶ 17, 444 P.3d 1283, 1287 (Wyo. 2019) (citation omitted). The plain language of W.R.Cr.P. Rule 3(e) allows an amendment any time prior to a verdict as long as there is no violation of the defendant's substantial rights. We have never held the amendment of an information prior to a verdict constitutes structural error. We decline to do so now.

[¶34] The probable cause affidavit accompanying Mr. LaJeunesse's information stated C.L. told Ms. Tonkel the charged events "occurred after [her] family had moved back from Colorado" and were "living with C.L.'s grandparents." The affidavit also stated the dates in the Information were based on the grandmother's recollection of the time the family moved from Colorado. While the trial testimony of C.L.'s grandfather expanded the time frame, throughout the proceedings, Mr. LaJeunesse knew the relevant time period began with the family's move to the Stanley Street apartment and continued until C.L. was removed from the family. He did not offer any time-based defense prior to the amendment. Notice of the charges was sufficient as a matter of law. The district court did not abuse its discretion in allowing the State to amend the Felony Information without a continuance.

## B.    Confrontation Clause

[¶35] Mr. LaJeunesse now argues the amendment prevented him from effectively cross-examining C.L. and Ms. Tonkel on the amended time frame in violation of the Confrontation Clause of the United States and Wyoming Constitutions. His objections at trial were not sufficient to raise Confrontation Clause concerns to the trial court. *See Villarreal v. State*, 2017 WY 81, ¶ 10, 398 P.3d 512, 516 (Wyo. 2017) (objection insufficient to raise Confrontation Clause); *Anderson v. State*, 2014 WY 13, ¶ 20, 317 P.3d 1108, 1115 (Wyo. 2014) (Confrontation Clause was not raised by "indistinct" objection).

### *STANDARD OF REVIEW*

[¶36] "When claims for violation of the Confrontation Clause are not raised below, our 'only avenue for review is under the doctrine of plain error.'" *Villarreal*, ¶ 10, 398 P.3d at 516 (quoting *McClure v. State*, 2010 WY 112, ¶ 7, 236 P.3d 1019, 1021 (Wyo. 2010)); *see also Anderson*, ¶ 20, 317 P.3d at 1115 ("[E]ven though the appellant claims constitutional error, without an appropriate objection, we will review his claim under a plain error standard.").

> To establish plain error, the appellant must prove (1) the record clearly reflects the alleged error; (2) the existence of a clear and unequivocal rule of law; (3) a clear and obvious transgression of that rule of law; and (4) the error adversely affected a substantial right resulting in material prejudice to him.

*Anderson*, ¶ 20, 317 P.3d at 1115–16 (citing *Zumberge v. State*, 2010 WY 111, ¶ 4, 236 P.3d 1028, 1030 (Wyo. 2010)).

[¶37] The record reflects the alleged error—the amendment of the Felony Information. The Confrontation Clause is a clear and unequivocal rule of law. The first two requirements for plain error are met. However, the record is also clear that no transgression of the Confrontation Clause occurred and, as a result, we do not reach the fourth step in the analysis.

> In order for there to be a violation of the right of confrontation, a defendant must show more than just a denial of the ability to ask specific questions of a particular witness. Rather, a defendant must show that he was prohibited "from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness . . . 'to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness.'" *Hannon* [*v. State*, 2004 WY 8,] ¶ 18, 84 P.3d [320,] 330 [(Wyo. 2004)] (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 680, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986)). The Confrontation Clause guarantees a defendant an "**opportunity** for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defendant might wish." *Van Arsdall*, 475 U.S. at 679, 106 S.Ct. at 1435 (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S.Ct. 292, 294, 88 L.Ed.2d 15 (1985) (*per curiam*)).

*Downing v. State*, 2011 WY 113, ¶ 11, 259 P.3d 365, 368–69 (Wyo. 2011) (quoting *Miller v. State*, 2006 WY 17, ¶ 8, 127 P.3d 793, 796 (Wyo. 2006)).

[¶38] C.L. and Ms. Tonkel were under subpoena requiring them to testify at trial. *See* W.R.Cr.P. Rule 17.[9] Neither were released from their respective subpoenas after the

---

[9] Rule 17 provides in pertinent part:
> (a) *For attendance of witnesses; form; issuance.*—Upon the filing of a precipe therefore, a subpoena shall be issued by the clerk under the seal of the court. It shall state the name of the court and the title, if any, of the proceeding, and shall command each person to whom it is directed to attend and give testimony at the time and place specified therein. . . .
> . . . .
> (g) *Contempt.*—Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued.

W.R.Cr.P. Rule 17(a), (g).

State presented its case. Both remained available to testify had Mr. LaJeunesse called them. He did not do so. He was not denied an opportunity to confront these witnesses, and the amendment to the Felony Information, without a continuance, had no effect on his defense. *See Burton v. State*, 2002 WY 71, ¶ 46, 46 P.3d 309, 321 (Wyo. 2002) ("The defense was not hindered in its ability to impeach the State's witnesses, and Burton has not shown that he was substantially prejudiced by the amendment."); *Lindstrom v. State*, 2015 WY 28, ¶ 29, 343 P.3d 792, 799 (Wyo. 2015) (amendment of information had no effect on theory of defense).[10] Mr. LaJeunesse fails to establish a violation of the Confrontation Clause.

## *CONCLUSION*

[¶39] The district court did not abuse its discretion in admitting evidence of other acts under W.R.E. Rule 404(b) or in allowing C.L.'s prior consistent statements under W.R.E. Rule 801(d)(1)(B). The amendment to the Felony Information, without a continuance, did not deny Mr. LaJeunesse his right to effectively cross-examine the witnesses or prejudice his defense. Affirmed.

---

[10] We are concerned, however, that the State did not seek the amendment to the Information until after it had presented its case. It is true W.R.Cr.P. Rule 3(e) does not place a duty on the State to amend an information at the earliest opportunity, but we have admonished the State before that waiting to seek an amendment "does not comport with the principles of fairness essential to our judicial system and can only be attributed to carelessness." *Meek v. State*, 2002 WY 1, ¶ 17, 37 P.3d 1279, 1285 (Wyo. 2002); *see also Beaugureau v. State*, 2002 WY 160, ¶ 9, 56 P.3d 626, 630 (Wyo. 2002). Nonetheless, in the absence of prejudice, we do not find error in the amendment of the Information.