# THE SUPREME COURT, STATE OF WYOMING

# 2022 WY 93

APRIL TERM, A.D. 2022

July 26, 2022

JASON HENRY ROBERTS,

Appellant
(Defendant),

v.

S-21-0248

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Campbell County*
*The Honorable Stuart S. Healy III, Judge*

*Representing Appellant:*
    Office of Public Defender: Diane M. Lozano, State Public Defender; Kirk A. Morgan, Chief Appellate Counsel; David E. Westling, Senior Assistant Appellate Counsel.

*Representing Appellee:*
    Bridget L. Hill, Wyoming Attorney General; Jenny L. Craig, Deputy Attorney General; Joshua C. Eames, Senior Assistant Attorney General; Catherine M. Mercer, Assistant Attorney General.

*Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY, and FENN, JJ.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**FENN, Justice.**

[¶1]   The State charged Jason Roberts by Felony Information with three identical counts of sexual assault in the third degree for acts committed on or between April 1, 1999, and June 30, 1999.  Prior to trial, the district court asked the State to differentiate the charges. The State did not amend the Felony Information until after its presentation of evidence when Mr. Roberts moved for a judgment of acquittal on the ground the Felony Information did not differentiate between the counts.  Before the case was submitted to the jury, the district court allowed the State to amend each count with factual specificity to conform with the affidavit of probable cause and the testimony at trial.  A jury convicted Mr. Roberts on one count and acquitted him on two counts.  On appeal, Mr. Roberts challenges the timeliness of the State's amendment.  We affirm.

## ISSUE

[¶2]   Did the district court err when it allowed the State to amend the Felony Information before submitting the case to the jury?

## FACTS

[¶3]   In May 2019, B.M. contacted the Gillette Police Department to report she was sexually assaulted approximately 22 years earlier in Gillette, Wyoming.  Detective Jeremy Dowdy, with the Gillette Police Department, arranged for a law enforcement agency in Idaho, where B.M. lived, to conduct a sit-down interview with B.M.  He assigned Detective Christine Winterholler, with the Gillette Police Department, as the lead investigator.

[¶4]   Detective Heath Downs, with the Caribou County Sheriff's Office in Soda Springs, Idaho, took a video recorded statement from B.M. in which she discussed being sexually assaulted by Jason Roberts when she was a child.  In her initial statement, B.M. stated she believed she was 11 years old at the time the alleged sexual assaults took place.  However, she later clarified the sexual assaults occurred between her sixth and seventh-grade years. B.M. further remembered when the sexual assaults took place based on Mr. Roberts's children's ages.  B.M. stated the sexual abuse stopped once she entered the seventh grade. While B.M. incorrectly believed she was 11 years old at the time, she was able to correlate the assaults with certain events that occurred during that time frame, including her parents' divorce.

[¶5]   During her investigation, Detective Winterholler interviewed B.M.'s Mother and learned she kept a diary during this time frame.  Detective Winterholler reviewed the diary and found entries that supported B.M.'s statements of the events that she correlated to when the assaults occurred.  While B.M. stated she was sexually assaulted by Mr. Roberts more than five times but less than ten times, Detective Winterholler only verified three different occasions that Mr. Roberts sexually assaulted B.M. between April 1, 1999, and June 30,

1999.  Detective Winterholler detailed the results of her investigation in an affidavit of probable cause.  Specifically, she included three different occasions where Mr. Roberts allegedly sexually assaulted B.M. between April 1, 1999, and June 30, 1999, when he was 26 years old and B.M. was 12 years old.

[¶6]    The affidavit stated all three sexual assaults occurred in the hallway of Mr. Roberts's residence during the same three-month timeframe.  It described the events and the correlating diary entries for each of the assaults.  The affidavit outlined the factual allegations that occurred during the first sexual assault, including that B.M. experienced vaginal bleeding the next morning.  It also summarized B.M.'s statement surrounding the second assault, which included her statement she went to Rapid City, South Dakota with Mr. Roberts and his wife and that Mr. Roberts sexually assaulted her the night before in the hallway of his residence.  The correlating diary entry dated May 30, 1999, was discussed in the affidavit and stated B.M. went to Rapid City with Mr. Roberts.  The third sexual assault was alleged to have occurred sometime around B.M.'s thirteenth birthday. The affidavit discussed B.M.'s statement that she remembered being sexually assaulted by Mr. Roberts around her birthday, and specifically, she remembered after the assault she went on a trip to Keyhole Lake with Mr. Roberts and his family.  The affidavit indicated the diary entry correlating to this event was dated June 11, 1999, to June 12, 1999, and detailed B.M.'s birthday party, including that she stayed the night with Mr. Roberts and went to Keyhole Lake the next day.

[¶7]    On July 7, 2020, the State charged Mr. Roberts with three identical counts of sexual assault in the third degree occurring on or between April 1, 1999, and June 30, 1999, in Campbell County, Wyoming, in violation of Wyoming Statute § 6-2-304(a)(i) (LexisNexis 1997).  The affidavit of probable cause was attached to the Felony Information.  The Felony Information and affidavit were both personally served on Mr. Roberts on July 10, 2020.

[¶8]    Beginning on June 1, 2021, a three-day jury trial was held.  At the start of the trial, the district court asked the State how it intended to differentiate between the three identical counts.  The district court indicated it raised the issue of the Felony Information charging three identical counts the previous week[1] and stated it was again putting the State on notice about its concern that all three charges were identically worded.  The district court stated it wanted to ensure the parties and the court understood the jury's verdict when it is returned.

[¶9]    During the State's presentation of evidence, it questioned each of its witnesses on the three sexual assaults that were detailed in the affidavit of probable cause.  Specifically,

---

[1] During the trial, the district court indicated it notified the State that the information needed to be amended in an email from his law clerk to the parties on May 27, 2021.  The record does not contain a copy of this email, aside from a reference by the district court in the trial transcript. *See generally Ballard v. State*, 2022 WY 7, ¶¶ 24-27, 501 P.3d 1269, 1273–74 (Wyo. 2022) (Davis, J., specially concurring) (discussing creating a clear record when the only record was emails between the court and the parties).

it questioned Detective Winterholler on B.M.'s statements surrounding each of the three assaults and each diary entry that supported and correlated to B.M.'s statements. Both Detective Winterholler and B.M. testified the three sexual assaults occurred when B.M. was 12 years old between her sixth and seventh-grade years from April 1999 to June 1999.

[¶10] Regarding the first sexual assault, Detective Winterholler testified it occurred in the hallway of Mr. Roberts's residence and that B.M. reported she experienced vaginal bleeding the following day. B.M.'s testimony paralleled Detective Winterholler's testimony and confirmed the statement about vaginal bleeding. Concerning the second and third sexual assaults, Detective Winterholler's and B.M.'s testimony mirrored the events and details set forth in the affidavit. Their testimony did diverge on which assault occurred after the first, however, both testified B.M. was sexually assaulted the night before she took a trip to Rapid City, South Dakota with Mr. Roberts and his wife, and again around her birthday before a camping trip to Keyhole. During cross-examination of Detective Winterholler and B.M., Mr. Roberts's counsel focused on B.M.'s statement that she was 11 years old and not 12 years old at the time the sexual assaults occurred and that all the sexual assaults were "essentially the same." Detective Winterholler clarified that based on B.M.'s statements "the actual sexual assault always occurred in the hallway . . . but [B.M.] remembered . . . that each incident was different based on what she had been doing. So[,] the first time was the menstrual cycle, the second time was when she went to Rapid, [and] the third time was around her birthday and the camping trip." She further clarified that B.M.'s memory was off by one year but her mother's diary entries from that time frame were consistent with [B.M.'s] statements of when the events occurred.

[¶11] After the State's presentation of evidence, Mr. Roberts moved for a judgment of acquittal, arguing the Felony Information did not differentiate between each count and "the jury [was] left to guess or speculate about which count [was] which action." The district court agreed with Mr. Roberts and found the Felony Information was not sufficient as drafted and noted it was "frustrated with the State because the Court ha[d] . . . reminded the State on several occasions over the course of this trial that the Information [was] a problem, and [it] still [did not] have an Amended Information . . . to review." However, the district court observed "that the defendant was put on notice of the three incidents in the affidavit attached to the Information" and that "the State did . . . attempt to differentiate through its questioning the three incidents and the date ranges that they occurred on." The district court reserved ruling on Mr. Roberts's motion until it received an amended information from the State.

[¶12] At the end of the second day of trial, before the case was submitted to the jury, the State moved to amend the Felony Information. The district court heard argument and granted the State's motion. The district court denied Mr. Roberts's motion for judgment of acquittal. In its ruling, the district court noted the affidavit of probable cause attached to the original Felony Information was filed of record and outlined the events surrounding three alleged incidents of sexual assault. The affidavit also coincided with B.M.'s trial

testimony. Ultimately, it found Mr. Roberts would not be prejudiced by allowing the Felony Information to be amended as proposed because the Felony Information properly placed Mr. Roberts on notice of the three charges against him, and he was given the opportunity to cross-examine the witnesses about all three events. The district court granted the amendment pursuant to Wyoming Rule of Criminal Procedure (W.R.Cr.P.) 3(e)(2)(B) and allowed the State to amend the three identical counts as follows: (1) Count 1 was amended by adding "in the hallway of the Defendant's residence which lead [sic] to vaginal bleeding of the victim;" (2) Count 2 was amended by adding "in the hallway of the Defendant's residence the evening prior to traveling to Rapid City, SD;" and (3) Count 3 was amended by adding "in the hallway of the Defendant's residence the evening prior to traveling to Keyhole State Park."

[¶13]  The jury convicted Mr. Roberts on Count 1 of the Amended Felony Information, but acquitted Mr. Roberts on Counts 2 and 3. The district court sentenced Mr. Roberts to incarceration for not less than seven years nor more than ten years. Mr. Roberts timely appealed.

## STANDARD OF REVIEW

[¶14]  W.R.Cr.P. 3(e) gives the district court wide discretion when deciding whether to grant a motion to amend an information. *Mowery v. State*, 2011 WY 38, ¶ 9, 247 P.3d 866, 868–69 (Wyo. 2011). "We review the trial court's decision applying our abuse of discretion standard." *Lajeunesse v. State*, 2020 WY 29, ¶ 28, 458 P.3d 1213, 1222 (Wyo. 2020). "In deciding whether or not the trial court abused its discretion, this court must determine whether the trial court could reasonably conclude as it did and whether any facet of its ruling was arbitrary or capricious." *Albarran v. State*, 2013 WY 111, ¶ 10, 309 P.3d 817, 820 (Wyo. 2013) (quoting *Wilkening v. State*, 2005 WY 127, ¶ 23, 120 P.3d 680, 687 (Wyo. 2005)).

[¶15]  "When an accused's constitutional right to notice of criminal charges is at issue, the determination on the adequacy of notice is a question of law, which we review de novo." *Lajeunesse*, ¶ 29, 458 P.3d at 1222.

## DISCUSSION

[¶16]  W.R.Cr.P. 3(e)(2)(B) authorizes the district court to permit a felony information to be amended, without the defendant's consent "[a]t any time before verdict or finding if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced." Mr. Roberts contends his substantial rights were prejudiced when the district court allowed the State to amend the Felony Information after the State's case-in-chief. The district court asked the State to differentiate between the charges before trial and again at the beginning of trial, but the State did not request to amend the Felony Information until

4

after it rested its case. Mr. Roberts contends the district court abused its discretion when it did not consider the State's reason for its delay in amending the Felony Information. He argues the delay prejudiced his substantial rights because his defense counsel did not have sufficient time to prepare and "adjust his strategy, consider the need for additional witnesses, or consider whether or not [Mr. Roberts] should testify."

[¶17]   "'An accused has a constitutional right to notice of the charges against him to allow him a fair opportunity to defend against the charges' under the United States Constitution, Sixth Amendment and Wyoming Constitution, Article 1, § 10." *Lajeunesse*, 2020 WY 29, ¶ 29, 458 P.3d at 1222 (quoting *Spagner v. State*, 2009 WY 12, ¶ 10, 200 P.3d 793, 798–99 (Wyo. 2009)).  To ensure proper notice of the accusations and enable the defendant to prepare a defense, these constitutional provisions and W.R.Cr.P. 3(e)(2)(B) require the information to: "(1) contain the elements of the offense charged; (2) fairly inform a defendant of the charges against which he must defend; and (3) enable a defendant to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Id.* at ¶ 32, 458 P.3d at 1223 (quoting *Spagner*, ¶ 10, 200 P.3d at 799).  To enable the defendant to plead an acquittal or conviction and ensure the defendant can prepare a defense, W.R.Cr.P. 3(b)(2) requires "[w]hen multiple counts are involved, the facts [in the information] must be stated with sufficient particularity so as to allow the defendant and court to distinguish between the various counts."

[¶18]   In the instant case, the original Felony Information charged Mr. Roberts with three identical counts of sexual assault in the third degree—with all three counts detailed in the words of the 1999 version of Wyoming Statute § 6-2-304(a)(i).  Specifically, the three counts were identically charged as:

> Under circumstances not constituting sexual assault in the first or second degree, was at least four (4) years older than the victim and inflicted sexual intrusion on the victim who was under the age of sixteen (16) years, to-wit: had sexual intercourse with B.M. (DOB: []), Third Degree Sexual Assault, in violation of Wyoming Statute § 6-2-304(a)(i) . . . .

The Felony Information as charged was flawed because it did not distinguish between the three counts.

[¶19]   Fundamental problems arise when a defendant is charged with identical, nonspecific counts. *Morones v. State*, 2020 WY 85, ¶¶ 15-18, 466 P.3d 300, 305–06 (Wyo. 2020); *Heywood v. State*, 2007 WY 149, ¶ 30, 170 P.3d 1227, 1235 (Wyo. 2007), *abrogated on other grounds by Granzer v. State*, 2008 WY 118, 193 P.3d 266 (Wyo. 2008).  If identical counts are carried on to the jury instructions and the resulting jury verdict, there is "'a danger that the jury may convict a defendant although not reaching a unanimous agreement on precisely which charge is the basis for the conviction' in violation of 'the Sixth

Amendment guarantee to a unanimous jury verdict.'" *Triplett v. State*, 2017 WY 148, ¶ 13, 406 P.3d 1257, 1260 (Wyo. 2017) (quoting *United States v. Washington*, 653 F.3d 1251, 1262 (10th Cir. 2011)). There are also potential due process problems as to whether the defendant is provided with sufficient notice to defend himself or whether there is sufficient specificity to protect the defendant from double jeopardy. *Morones*, 2020 WY 85, ¶ 17, 466 P.3d at 305 (discussing *Heywood*, 2007 WY 149, ¶ 22, 170 P.3d at 1233); *see also Russell v. United States*, 369 U.S. 749, 763–64, 82 S. Ct. 1038, 1047, 8 L. Ed. 2d 240 (1962).

[¶20] The district court recognized the Felony Information was deficient and asked the State how it intended to differentiate between the three counts. The State did not attempt to differentiate between the three counts until after its presentation of evidence and before Mr. Roberts began presenting his case. The proposed amendment differentiated between each count by adding the following language: (1) Count 1 was amended by adding "in the hallway of the Defendant's residence which lead [sic] to vaginal bleeding of the victim;" (2) Count 2 was amended by adding "in the hallway of the Defendant's residence the evening prior to traveling to Rapid City, SD;" and (3) Count 3 was amended by adding "in the hallway of the Defendant's residence the evening prior to traveling to Keyhole State Park."

[¶21] Mr. Roberts does not contend he was unaware of the factual allegations used to differentiate between the counts prior to the amendment. Indeed, he does not challenge the substance of the Amended Information but instead focuses his argument on the district court's failure to inquire into the timeliness of the amendment.

[¶22] "The timing of an amendment is often a key factor in assessing prejudice." *Lindstrom v. State*, 2015 WY 28, ¶ 28, 343 P.3d 792, 799 (Wyo. 2015). However, in opposing an amendment, the defendant "must make some showing that the proposed change introduces an element of surprise that will interfere with the defense's ability to defend against the charges." 5 Wayne R. LaFave et al., *Criminal Procedure* § 19.5(b) (4th ed. 2021). Thus, the issue for us to decide is whether Mr. Roberts was able to prepare a defense for the amended counts even though the amendment occurred during trial. *Albarran*, 2013 WY 111, ¶ 16, 309 P.3d at 821. We find he was and the amendment did not prejudice his substantial rights.

[¶23] The facts of this case are similar to those in *Albarran*. In *Albarran*, the defendant was charged with three counts. 2013 WY 111, ¶ 4, 309 P.3d at 818–19. Count three in the information charged the defendant with aggravated burglary but cited a subsection of the statute for burglary with the corresponding lesser penalty. *Id.* Four days before trial, the defendant moved to dismiss count three because it did not set forth the elements for aggravated burglary. *Id.* at ¶ 6, 309 P.3d at 819. On the morning of trial, the district court granted the State's request "to correct the charge of aggravated burglary and recite its maximum penalty." *Id.* at ¶¶ 7–8, 309 P.3d at 819–20. On appeal, the defendant did not

6

challenge the substance of the amended information, but instead focused his argument on the timeliness of the amendment. *Id.* at ¶ 16, 309 P.3d at 821. Despite the timing, we upheld the district court's decision to allow the amendment because it "was based on the same facts and evidence as the original charge and arose out of the same event." *Id.* at ¶ 18, 309 P.3d at 822 (citing *Jones v. State*, 2009 WY 33, ¶ 16, 203 P.3d 1091, 1096 (Wyo. 2009)). We held the defendant was on notice from the start, based on the facts set forth in the affidavit of probable cause, and found "the sufficiency of an information is determined 'from a broad and enlightened standpoint of right reason rather than from a narrow view of technicality and hairsplitting. . . .'" *Id.* at ¶ 17, 309 P.3d at 821 (quoting *Spagner*, 2009 WY 12, ¶ 13, 200 P.3d at 799).

[¶24] Recently, we applied similar reasoning in *Lajeunesse* and held a detailed affidavit attached to the information may provide some of the information necessary for proper notice. *Lajeunesse*, 2020 WY 29, ¶¶ 32–34, 458 P.3d at 1223–24; *Spagner*, 2009 WY 12, ¶¶ 10–13, 200 P.3d at 798–99. We emphasized "the key is whether the defendant has been misled to his prejudice." *Lajeunesse*, 2020 WY 29, ¶ 33, 458 P.3d at 1223–24 (quoting *Spagner*, 2009 WY 12, ¶ 13, 200 P.3d at 799). In *Lajeunesse*, the defendant was charged with two counts of first-degree sexual abuse of a minor. 2020 WY 29, ¶ 5, 458 P.3d at 1216. At the close of the State's presentation of evidence, the State moved to amend the dates set forth in the information to conform to the evidence presented at trial. *Id.* at ¶ 8, 458 P.3d at 1217. The district court granted the amendment and denied the defendant's request for continuance. *Id.* On appeal, the defendant claimed, "the amendment was untimely, and he was substantially prejudiced because it denied him the opportunity to effectively cross-examine . . . the only two substantive witnesses at trial." *Id.* We found the probable cause affidavit informed the defendant when the charged events allegedly occurred. *Id.* at ¶ 34, 458 P.3d at 1224. We affirmed the district court's decision and found notice of the charges was sufficient as a matter of law. *Id.* at ¶¶ 27–38, 458 P.3d at 1222–1225. We held there was no due process violation because the defendant was put on adequate notice of the allegations through the affidavit. *Id.*

[¶25] Here, the original Felony Information and Amended Felony Information charged Mr. Roberts with three counts of third-degree sexual assault and alleged the assaults occurred on or between April 1, 1999, and June 30, 1999. The affidavit of probable cause attached to the original Felony Information and served upon Mr. Roberts stated, "the sexual assault incidences occurred on three different occasions between April 1999 and June 1999 . . . which means [B.M.] was 12 years old, turning 13 years old. . . ." While the affidavit discussed B.M. reported she was sexually assaulted five to ten times, the original Felony Information charged only three counts and the affidavit detailed only three separate occasions that B.M. was allegedly sexually assaulted by Mr. Roberts. Furthermore, witness testimony by the investigating detective and B.M. during the State's presentation of evidence mirrored the events and details as set forth in the affidavit and discussed only the same three sexual assaults detailed in the affidavit.

7

[¶26] The affidavit and witness testimony detailed the first sexual assault occurred in the hallway of Mr. Roberts's home when Mr. Roberts and his wife were babysitting B.M., and that B.M. experienced vaginal bleeding the next morning after the sexual assault. On another occasion, separate from the first sexual assault, the affidavit and testimony stated B.M. remembered being sexually assaulted again in the hallway of Mr. Roberts's residence the evening before she traveled to Rapid City, South Dakota, with Mr. Roberts and his wife. Testimony and the affidavit asserted B.M.'s mother's diary from that time frame indicated B.M. went to Rapid City with Mr. Roberts and his wife on Saturday, May 30, 1999. The affidavit and testimony outlined a third incident where B.M. remembered being sexually assaulted on or near her birthday in June when she went on a camping trip to Keyhole Lake with Mr. Roberts and his family. The affidavit and testimony described a diary entry from B.M.'s mother's diary dated June 11, 1999, and June 12, 1999, which discussed B.M.'s birthday party and the trip to Keyhole Lake and that B.M. stayed the night with Mr. Roberts and his wife.

[¶27] After reviewing the Felony Information, Amended Information, attached affidavit, and trial transcript, we find Mr. Roberts was given sufficient notice of the three charges of sexual assault and the surrounding factual allegations against him. We further find he was given a sufficient opportunity to prepare his defense. The amendment had no effect on Mr. Roberts's defense. The original Felony Information charged Mr. Roberts with three identical counts of sexual assault that allegedly occurred between April 10, 1999, and June 30, 1999, which were fully detailed in the affidavit served on Mr. Roberts with the original Felony Information. Furthermore, during trial, Detective Winterholler's and B.M.'s testimony only discussed three sexual assaults as alleged in the affidavit. The testimony paralleled B.M.'s previous statements, which were detailed in the affidavit.

[¶28] When cross-examined by Mr. Roberts's counsel, Detective Winterholler described the three sexual assaults and differentiated each sexual assault by testifying "that each incident was different based on what [B.M.] had been doing." In particular, she distinguished each assault by stating "the first time was the menstrual cycle, the second time was when she went to Rapid, [and] the third time was around her birthday and the camping trip." Mr. Roberts's counsel cross-examined Detective Winterholler extensively on B.M.'s statements and the factual allegations in the affidavit, including statements allegedly made by Mr. Roberts and the assertion that the morning after the first assault B.M. was bleeding from her vagina. Mr. Roberts was also given the opportunity to fully cross-examine B.M. and the statements she previously made about the three sexual assaults.

[¶29] We adhere to our holdings in *Albarran* and *Lajeunesse* and find the district court did not abuse its discretion when it allowed the State to amend the Felony Information because the amendment was based on the same facts and evidence as detailed in the affidavit and testified to at trial. The district court was required to distinguish the charges before submitting the case to the jury, and the amendment merely specified what alleged

8

conduct was charged in each count. *See generally* W.R.Cr.P. 3(b)(2); *Morones*, 2020 WY 85, ¶ 18, 466 P.3d at 306 ("[W]e caution the State and district courts to be mindful of the need for specificity in cases involving multiple counts of the same crime."); *Heywood*, 2007 WY 149, ¶ 30, 170 P.3d at 1235 (discussing the district court commits prejudicial error if the jury instructions do not differentiate between counts). Accordingly, we find Mr. Roberts was not misled to his prejudice and was adequately apprised of the allegations against him to sufficiently prepare a defense.

## CONCLUSION

[¶30] The district court did not abuse its discretion when it allowed the State to amend the Felony Information during trial, and Mr. Roberts's substantial rights were not prejudiced by the amendment. We affirm.