# IN THE SUPREME COURT, STATE OF WYOMING

# 2025 WY 12

### OCTOBER TERM, A.D. 2024

**January 28, 2025**

ANTHONY FRANK TORRES,

Appellant
(Defendant),

v.                                                              S-24-0108

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Sweetwater County*
The Honorable Richard L. Lavery, Judge

*Representing Appellant:*
Office of the State Public Defender: Brandon Booth*, Wyoming State Public Defender; Kirk A. Morgan, Chief Appellate Counsel; Sean H. Barrett, Senior Assistant Appellate Counsel. Argument by Mr. Barrett.

*Representing Appellee:*
Bridget Hill, Wyoming Attorney General; Jenny L. Craig, Deputy Attorney General; Kristen R. Jones, Senior Assistant Attorney General. Argument by Ms. Jones.

*Before FOX, C.J., and BOOMGAARDEN, GRAY, FENN, and JAROSH, JJ.*

* An Order Substituting Brandon Booth for Ryan Roden was entered on October 10, 2024.

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**JAROSH, Justice.**

[¶1]     A jury convicted Anthony Torres of twelve counts of sexual abuse of a minor.  On appeal, he argues the district court abused its discretion when it allowed the State to amend its Information and add three additional charges of sexual abuse ten days before trial.  Mr. Torres also alleges the district court abused its discretion when it admitted three excerpts of a videotaped forensic interview of one of the minors into evidence.  Finding no abuse of discretion, we affirm.

## ISSUES

[¶2]     Mr. Torres raises two issues on appeal, which we rephrase as follows:

(1)     Did the district court abuse its discretion when it granted the State's motion to amend the Information?

(2)     Did the district court abuse its discretion when it allowed excerpts of State's Exhibit 1 into evidence?

## FACTS

[¶3]     Anthony and Samantha Torres married in 2010.  Mr. Torres adopted Ms. Torres' son from a previous relationship, GT, born in 2006.  Together, the couple had two children, KT born in 2010, and LT born in 2013.  In late 2019, the couple divorced and Ms. Torres moved from Green River, Wyoming, to Rangely, Colorado.  In January 2020, Mr. Torres moved to Rangely, but lived in a separate residence.

[¶4]     In July 2020, GT told his mother and Rangely police that Mr. Torres had requested oral sex from him.  After  investigating, Rangely police determined there was not enough evidence to pursue charges.  In 2022, GT reported to Rangely police that Mr. Torres had sexually abused him for years in Wyoming and Colorado.  In an interview with a forensic interviewer, Kat Stenquist, GT described three separate incidents of abuse that had taken place at their home in Wyoming:  (1) in June or July 2012, as Mr. Torres stepped out of the shower; (2) sometime between August and December 2012 on a bed in the basement; and (3) on Christmas Day in 2016 on a couch in the basement.

[¶5]     Rangely police shared GT's recorded interview with the Green River Police Department, which launched an investigation.  Green River police arrested Mr. Torres on July 26, 2022.  In an August 2022 Information, Mr. Torres was charged with five counts of first-degree sexual assault of a minor in violation of Wyo. Stat. Ann. § 6-2-314(a) (2023), and five counts of second-degree sexual assault of a minor in violation of Wyo. Stat. Ann. § 6-2-315(a) (2023).

1

[¶6]    The following month, GT's youngest brother LT told his mother Mr. Torres had exposed himself to LT.  Ms. Torres called the Rangely police and, in October 2022, LT participated in a forensic interview.  During the interview, LT reported additional incidents of sexual assault by Mr. Torres.  At the time, the State did not bring charges against Mr. Torres involving LT.

[¶7]    Trial was scheduled for September 11, 2023.  In April 2023, the State disclosed in its pretrial memorandum that it may call LT as a witness to testify "as to grooming behavior that he experienced from [Mr. Torres] that is substantially the same as grooming behavior experienced by the victim."  One month later, the State charged Mr. Torres with one count of second-degree sexual abuse of a minor relating to his abuse of LT.  Trial in this second case was set for November 6, 2023.

[¶8]    On July 14, 2023, the State filed a motion to join the two cases for a single trial.  The district court held a hearing on the motion on August 7, 2023, and Mr. Torres, who by now had separate attorneys for each case, objected to joinder.  On August 11, 2023, the district court entered its Order Granting Joinder, with the trial scheduled to begin on September 11, 2023.  Mr. Torres did not appeal the order.

[¶9]    On August 30, 2023, the State filed a motion to amend the newly combined eleven-count Information to add three more counts of first-degree sexual abuse of LT.  The State explained that during trial preparation on August 28, 2023, LT revealed more abuse by Mr. Torres.  As soon as LT disclosed the new information, prosecutors left the room and investigators conducted another recorded forensic interview.  The State notified Mr. Torres' attorneys within the hour and provided the newly recorded interview the next day.

[¶10]  Mr. Torres objected to the motion to amend the Information, arguing it would be "extremely prejudicial to add three counts ten days before trial."  At a September 1, 2023, hearing on the motion, the district court and the parties discussed several options, including a continuance or severing the cases and holding two separate trials—one related to GT and one related to LT.  Mr. Torres' counsel argued for severing the cases.  Ultimately, the district court granted the motion to amend the Information and kept the cases consolidated, but continued the trial from September 11, 2023, to October 2, 2023.  The court also set a deadline of September 22, 2023, for any final filings by Mr. Torres.  Importantly, the district court offered Mr. Torres two later trial settings, one beginning on November 6, 2023, and the other beginning on November 13, 2023.  Although they confirmed they were both available on the November dates, Mr. Torres' counsel in the case involving GT preferred the October 2 date and his other counsel agreed to that setting.

[¶11]  The State filed its Amended Information with fourteen felony charges:  five counts of first-degree sexual abuse of GT in violation of Wyo. Stat. Ann. § 6-2-314(a); five counts of second-degree sexual abuse of GT in violation of Wyo. Stat. Ann. § 6-2-315(a); three counts of first-degree sexual abuse of LT in violation of Wyo. Stat. Ann. § 6-2-314(a);

2

and one count of second-degree sexual abuse of LT in violation of Wyo. Stat. Ann. § 6-2-315(a).

[¶12] On October 2, 2023, the first day of trial, Mr. Torres filed a motion to sever the case involving LT from the case involving GT. In light of the September 22, 2023, filing deadline, the district court found "the motion to separate the cases is late and is denied. We're going forward with this trial." Mr. Torres did not appeal the denial of his motion.

**GT's Testimony**

[¶13] The first witness was GT, who testified about three instances of abuse in the family home in Green River. First, he described that he went in to use the bathroom while Mr. Torres was in the shower. Mr. Torres "shut off the water and opened the curtain," and, while he was holding his penis said, "it's big, right?" He then asked GT if he "wanted to touch it." Mr. Torres grabbed GT's right hand and placed it on his penis, and said, "yours is small, but it will get bigger." GT then walked out of the bathroom.

[¶14] GT testified to a second incident in a basement bedroom. Specifically, GT testified Mr. Torres had locked him in the bedroom one night and later came in and sat on the end of the bed. Both he and Mr. Torres had their "pants off and were masturbating each other" and "gave each other blow jobs." That incident continued with GT feeling "a cold, wet sensation" near his anus and Mr. Torres penetrating him.

[¶15] GT testified to a third incident on a couch in the basement on Christmas Day when, after everyone else in the family went to bed, Mr. Torres asked GT to take off his pants and the two "masturbated each other … for several minutes." GT stated Mr. Torres then went "down and proceed[ed] to put my penis on his mouth." GT recalled a "cold feeling" on his neck and remembered Mr. Torres wore a bracelet. GT also remembered performing oral sex on Mr. Torres.

[¶16] During trial, GT also testified to specific details about Mr. Torres' body, including a description of his penis. He testified his memory on the day of trial was "not as good as it was in 2022" when interviewed by the forensic interviewer. He explained, "[A]fter I had talked to [the forensic interviewer], my understanding was that was it. I was done. I'd move on with my life, never have to speak of it again." GT also said he was "pissed off" and "mad" about having to talk about the events again.

**LT's Testimony**

[¶17] LT testified after his brother. He described two incidents at their home in Green River when he and Mr. Torres performed oral sex on each other—one in a bedroom and one in a bathroom. He did not recall either of them using their hands or anything happening with his "behind."

3

*Exhibit 1*

[¶18]   The State's Exhibit 1 was a videotape of GT's June 2022 forensic interview with Ms. Stenquist and is the primary subject of this appeal.  Several times during trial, the district court and parties discussed the admissibility of Exhibit 1 outside the presence of the jury, including before GT testified.  During the discussion before GT's testimony, Mr. Torres' counsel lodged a hearsay objection to Exhibit 1, but acknowledged admission of the video would depend on whether GT made consistent statements on the witness stand.  As a result, Mr. Torres' counsel stated she would make objections to the admission of Exhibit 1, if any, when the State tried to introduce it.  During the colloquy Mr. Torres' other counsel indicated that he "would prefer" Exhibit 1 not be admitted because GT was going to testify, but that if it was admitted he wanted the jury to see the entire video instead of just "snippets."

[¶19]   In response, the district court stated "the two alleged victims' credibility was called into question" during Mr. Torres' opening statement, "so if the State chooses to want to play parts of [the forensic interviews], I think they're going to be entitled to, depending on the testimony today."  Specifically, during Mr. Torres' opening statements his counsel stated the verdict would turn on his sons' "credibility" and "motivations," and described GT as a "problem child" with "anger issues."  In discussing LT's credibility, Mr. Torres' counsel encouraged the jury to consider "who he's been talking to and who's been telling him things, who has he been around, who has he not been around."  Mr. Torres' counsel also pointed out that LT did not disclose his abuse until GT's case was pending, and LT made new disclosures right before trial, the timing of which Mr. Torres' called "very odd and more than a coincidence."

[¶20]   Both GT and LT completed their testimony on the second day of trial.  After dismissing the jury for the day, and knowing the issue of Exhibit 1's admissibility was imminent, the district court asked the parties to review Exhibit 1 and "note the page and line of any statement you believe is consistent [with the testimony GT gave at trial]."  The court also directed the parties to Wyoming Rule of Evidence (W.R.E.) 801(d)(1)(B) and *Griggs v. State,* 2016 WY 16, ¶ 100, 367 P.3d 1108,  1136-37 (Wyo. 2016), which the court quoted:

> The statements must be consistent with the declarant's trial testimony.  A prior consistent statement cannot be used as means of proving new points not covered in the testimony of the declarant.  Material information presented for the first time to support a prior consistent statement has no antecedent with which to be consistent or inconsistent and is therefore inadmissible.  However, the prior consistent statement does not have to be identical to the declarant's trial testimony to be

4

admissible under Rule 801(d)(i)(B). Instead, the rule allows admission of a statement that is generally consistent with the trial testimony.

[¶21] Each party subsequently identified portions of Exhibit 1 they believed were consistent or inconsistent with GT's trial testimony. Mr. Torres' counsel prepared and shared a highlighted and color-coded transcript of the forensic interview.

[¶22] Prior to reconvening the jury the morning of the fourth day of trial, the district court and parties again discussed Exhibit 1, including the three excerpts of the videotaped interview that are at issue in this appeal. Later that day, during a break shortly after the start of the Ms. Stenquist's testimony, they discussed Exhibit 1 again. The various discussions are best summarized as follows:

### Exhibit 1B – Shower Incident

[¶23] Exhibit 1B was an excerpt that included GT describing what happened in the shower in June or July 2012. Mr. Torres objected that some of Exhibit 1B was "inconsistent, or just not in evidence from the testimony." The State responded that any details in Exhibit 1B that were not in GT's trial testimony were "minor issues" or were "background." The district court stated it would admit Exhibit 1B but ordered the State to cut some of the portions of the clip that Mr. Torres objected to.

### Exhibit 1E – Christmas Day Incident

[¶24] Exhibit 1E was an excerpt wherein GT discussed what happened on the couch in the basement on Christmas Day, 2016. Mr. Torres objected that Exhibit 1E included details that were not part of GT's trial testimony, such as a description of the parties' clothing that day, GT's observation of Mr. Torres' erection, and statements GT and Mr. Torres made to one another. The district court acknowledged additional details were "sprinkled in here and there" but stated they were not important enough points "materially different from the testimony[.]" As a result, the district court indicated it would admit Exhibit 1E.

### Exhibit 1K – Physical Description of Mr. Torres

[¶25] Exhibit 1K was an excerpt in which GT described in detail Mr. Torres' naked body. Mr. Torres objected that GT's trial testimony lacked detail GT had mentioned in the forensic interview and was at times inconsistent with it (e.g., the descriptions of specific markings on Mr. Torres' penis were different). The district court concluded the interview and testimony were "substantially similar" and stated it would admit Exhibit 1K.

**Ms. Stenquist's Testimony**

5

[¶26] Ms. Stenquist testified about and repeated statements GT made to her about the shower incident in Green River. The State asked to play Exhibit 1B, and Mr. Torres' counsel objected that it was cumulative, arguing, "the purpose … for the video is for prior consistent statements. Those statements have already been made through this witness. I don't see the purpose of having the video played for a third consistent statement." The State responded, " … there's additional evidence that can be obtained by the jury by being able to observe the demeanor of the victim as he … gives his disclosure." The district court allowed the State to play Exhibit 1B and admitted it into evidence.

[¶27] Ms. Stenquist then testified as to the Christmas Day incident but did not repeat GT's statements. She did testify GT "was very descriptive," "where his pants were," and "his head going up and down." When the State asked to play Exhibit 1E, Mr. Torres did not object, and the exhibit was admitted into evidence and played for the jury.

[¶28] Finally, Ms. Stenquist testified she asked GT to describe Mr. Torres' body during the interview, although Ms. Stenquist did not repeat GT's description to the jury. The State moved for the admission of Exhibit 1K and, without objection from Mr. Torres' counsel, the exhibit was admitted into evidence and played for the jury.

**Remainder of Trial**

[¶29] Mr. Torres did not present a case-in-chief. At the close of evidence, and at Mr. Torres' request, the district court gave the following limiting instruction regarding Exhibits 1B, 1E, and 1K:

> You are instructed that the testimony of Kat Stenquist and Martha Holzgrafe[1] regarding any prior consistent statements you may find [GT] or [LT] made to them, and Exhibit 1, videos of Kat Stenquist's interview of [GT], and Exhibit 40, videos of Martha Holzgrafe's interview of [LT], may be considered only for the limited purpose of evaluating the credibility of [GT] and [LT] and should not be considered directly as proof of the matters asserted in the statements.

[¶30] After the State conceded it had not presented sufficient evidence on two of the counts related to LT, the jury convicted Mr. Torres on the remaining twelve counts. The district court sentenced him to 108-125 years in prison. Mr. Torres timely appealed.

**DISCUSSION**

---

[1] Martha Holzgrafe was the forensic interviewer for LT and Exhibit 40, which is not relevant to this appeal, was the recording of that interview.

### *I.     Amended Information*

[¶31]  Mr. Torres first argues the district court erred when it allowed the State to amend the Information and add three new charges of first-degree sexual abuse involving LT less than two weeks before trial.  Specifically, he asserts the timing caused him extreme prejudice in violation of W.R.Cr.P. 3(e)(2)(A) because he was denied adequate time to "investigate and prepare a defense."

[¶32]  Wyoming Rule of Criminal Procedure (W.R.Cr.P.) 3(e) governs motions to amend an information, and provides in relevant part:

> The court may permit an information or citation to be amended:
>   (1) With the defendant's consent, at any time before sentencing.
>   (2) Whether or not the defendant consents:
>     (A) At any time before trial if substantial rights of the defendant are not prejudiced.
>     (B) At any time before verdict or finding if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced.

[¶33]  As we have explained, W.R.Cr.P. 3(e) gives the district court wide discretion in determining whether to grant a motion to amend an information.  *Roberts v. State*, 2022 WY 93, ¶ 14, 513 P.3d 850, 853 (Wyo. 2022) (citing *Mowery v. State*, 2011 WY 38, ¶ 9, 247 P.3d 866, 868-69 (Wyo. 2011)).  We therefore review a trial court's decision to grant or deny a motion to amend for an abuse of discretion.  *Lajeunesse v. State*, 2020 WY 29, ¶ 28, 458 P.3d 1213, 1222 (Wyo. 2020) (citation omitted).  In determining whether a court abused its discretion, we must determine whether the district court could reasonably conclude as it did and "'whether any facet of its ruling was arbitrary or capricious.'"  *Roberts,* ¶ 14, 513 P.3d at 853-54 (quoting *Albarran v. State*, 2013 WY 111, ¶ 10, 309 P.3d 817, 820 (Wyo. 2013) (quotation omitted)).

[¶34]  An accused has a constitutional right to notice of the charges brought against him so that he has a fair opportunity to defend himself against the charges.  *Albarran*, ¶ 15, 309 P.3d at 821 (citing U.S. Const. amend. VI; Wyo. Cont. art 1, § 10).  As a result, when notice is an issue, the adequacy of the notice is a question of law that we review de novo.  *Lajeunesse*, ¶ 29, 458 P.3d at 1222 (citing *Spagner v. State,* 2009 WY 12, ¶ 10, 200 P.3d 793, 798-99 (Wyo. 2009)).

[¶35]  There is no doubt that the timing of an amended information may prejudice a defendant or result in inadequate notice.  In *Lindstrom v. State,* 2015 WY 28, ¶ 22, 343 P.3d 792, 798 (Wyo. 2015), we explained it is "often a key factor in assessing prejudice." *Id.,* (citing 5 Wayne R. LaFave, Jerold H. Israel, Nancy J. King and Orin S. Kerr, Criminal

Procedure § 19.5(b), 311 (3d ed.2007)). However, timing alone is not enough to establish prejudice or that a court abused its discretion. On several occasions this Court has affirmed a district court amending an information shortly before or even during trial. *See, e.g., Roberts*, ¶ 30, 513 P.3d at 857 (during trial); *Albarran*, ¶ 20, 309 P.3d at 822 (morning of trial); *Meek v. State,* 2002 WY 1, ¶ 17, 37 P.3d 1279, 1285 (Wyo. 2002) (morning of trial). Rather, the question is whether the timing caused prejudice to a defendant's substantial rights—including the right to notice. To establish prejudice, a defendant must show the proposed amendments will somehow interfere with or impede the opportunity to present his defense. *Roberts*, ¶ 22, 513 P.3d at 855 (citation omitted).

[¶36] Our analysis in *Lindstrom* is particularly informative in examining Mr. Torres' case. In December 2013, after a five-day trial, a jury convicted Mr. Lindstrom of three counts of first-degree sexual abuse of a minor, three counts of second-degree sexual abuse of a minor, and several other offenses. *Lindstrom,* ¶ 13, 343 P.3d at 796. Approximately a month prior, one of the victims testified during a deposition as to specific details of the alleged sexual intrusions that were different than the details in the original information. *Id.,* ¶ 24, 343 P.3d at 798. Two days after the deposition, the State filed a motion to amend the information to conform to the deposition testimony. *Id.,* ¶ 25, 343 P.3d at 798. Mr. Lindstrom objected that including the new facts prejudiced his right to a fair trial and to prepare his defense. *Id.* He did not, however, request a continuance. *Id.*, ¶ 28, 343 P.3d at 799. The district court allowed the amendments. *Id.*, ¶ 25, 343 P.3d at 798.

[¶37] In affirming the district court, this Court explained prejudice from an amended information may be avoided by successfully seeking a trial continuance, and that "'courts are hesitant to find prejudice if a continuance was … not requested.'" *Id.*, ¶ 28, 343 P.3d at 799 (quoting 5 Wayne R. LaFave, Jerold H. Israel, Nancy J. King and Orin S. Kerr, *Criminal Procedure* § 19.5(b), 311 (3d ed. 2007)). In addition, we concluded the amendments to the information did not affect Mr. Lindstrom's defense whatsoever, as his defense was that he was not in town when the assaults occurred. *Id.,* ¶ 29, 343 P.3d at 799 ("With the amendment, Mr. Lindstrom still attempted to prove he was not in Buffalo when the offenses occurred and could not, therefore, have committed them. Under these circumstances, the amendment did not prejudice his defense.").

[¶38] Here, and while the amendments to Mr. Torres' Information were additional counts instead of changes to existing ones, Mr. Torres cannot demonstrate substantial prejudice for reasons similar to those in *Lindstrom*. First, when the district court granted the State's motion to amend the Information shortly before trial, it also continued the trial, *even though Mr. Torres did not request a continuance*. In addition, the continuance was to a date Mr. Torres' counsel expressly agreed to—even preferred—and only after the court confirmed that the new date provided Mr. Torres sufficient time to prepare for trial. Specifically, the district court and parties discussed three possible trial dates—October 2, November 6, and November 13. In settling on October 2, the following discussion took place:

COURT: . . . And I say that because in granting the amendment, I want to make sure that Defendant, Mr. Torres, has enough time to be prepared, and if October 2nd isn't, now's the time so say so, but if you're good with October 2nd, then that's when we'll do it.

[Mr. Torres' attorney] MS. CHERNI: And that would work for me. I would defer to Mr. Arnell, if he needs more time, either – with the addition of the three counts to his, I would assume.

COURT: Mr. Arnell.

[Mr. Torres' other attorney] MR. ARNELL: Your Honor, October 2nd will be fine.

In short, the district court's continuance of the trial to a date suitable to Mr. Torres—when later dates were offered and rejected—demonstrates the timing of the amendments to the Information did not deny him adequate notice of the charges against him or adequate time to investigate and prepare his defense.

[¶39] In addition, the three new charges of first-degree sexual abuse on LT were all alleged to have happened during the same time period when the State previously alleged Mr. Torres engaged in grooming behavior of LT. Specifically, in its April 2023 pretrial memorandum, the State gave notice LT might "testify as to grooming behavior that he experienced from [Mr. Torres] is substantially the same as grooming behavior experienced by [GT]." Moreover, the State filed its initial Information related to abuse of LT on July 7, 2023, more than three months before trial. All of this is significant because, as the district court noted, the new charges did not change Mr. Torres' defense, which was that Ms. Torres influenced GT and LT to fabricate their stories. For this additional reason, the amendments to the Information did not deprive Mr. Torres of adequate notice or time to investigate and prepare his defense.

[¶40] Mr. Torres has not demonstrated that the district court abused its discretion or that he received inadequate notice when it allowed the State to amend the Information.

## II. _Admission of Prior Consistent Statements – Exhibits 1B, 1E, 1K_

[¶41] Mr. Torres' second issue involves the district court's admission of Exhibits 1B, 1E, and 1K—the video excerpts from the 2022 forensic interview of GT by Ms. Stenquist. On appeal, Mr. Torres acknowledges Exhibit 1B was a prior consistent statement under Wyoming Rule of Evidence (W.R.E.) 801(d)(1)(B), but asserts it was nonetheless irrelevant, cumulative, and unduly prejudicial. As for Exhibits 1E and 1K, Mr. Torres maintains they were not admissible prior consistent statements under Rule 801(d)(1)(B).

[¶42] "We review rulings on the admissibility of evidence for an abuse of discretion." *Bittleston v. State,* 2019 WY 64, ¶ 39, 442 P.3d 1287, 1297 (Wyo. 2019) (citing *Farrow v. State,* 2019 WY 30, ¶ 52, 437 P.3d 809, 823 (Wyo. 2019)). "For us to conclude that a trial court abused its discretion in weighing evidence under W.R.E. 403, 'the appellant must show that the testimony has little or no value and that it was extremely inflammatory or introduced solely for the purpose of inflaming the jury.'" *Bittleston,* ¶ 39, 442 P.3d at 1297 (quoting *Hill v. State*, 2016 WY 27, ¶ 37, 371 P.3d 553, 564 (Wyo. 2016)). "Determining whether the trial court abused its discretion involves the consideration of whether the court could reasonably conclude as it did, and whether it acted in an arbitrary and capricious manner." *Bittleston,* ¶ 39, 442 P.3d at 1297 (quoting *Moser v. State*, 2018 WY 12, ¶ 40, 409 P.3d 1236, 1248 (Wyo. 2018) (other citations omitted)).

[¶43] Here, the district court admitted all three of the challenged excerpts as prior consistent statements under W.R.E. 801(d)(1)(B), which states:

> (d) Statements Which Are Not Hearsay. A statement is not hearsay if:
> (1) Prior Statement by Witness: The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is … (B) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive…

[¶44] Four requirements must be satisfied for a statement to constitute an admissible prior consistent statement under W.R.E. 801(d)(1)(B): "(1) the declarant must testify at trial; (2) the declarant must be subject to cross-examination concerning the prior statement; (3) the prior statement must be consistent with the declarant's trial testimony; and (4) the prior statement must be offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive." *Hicks v. State,* 2021 WY 2, ¶ 13, 478 P.3d 652, 657 (Wyo. 2021) (citing *Griggs*, ¶ 98, 367 P.3d at 1136; *Large v. State,* 2008 WY 22, ¶ 37, 177 P.3d 807, 818-19 (Wyo. 2008)). In this case, the only requirement at issue was the third one.

[¶45] Notably, and different from the rule in federal courts, prior consistent statements are admissible under W.R.E. 801(d)(1)(B) regardless of whether they were made before or after the improper motive arose for the statements to be admissible. *Hicks*, ¶ 15, 478 P.3d at 658, citing *Jones v. State,* 2019 WY 45, ¶ 16, 439 P.3d 753, 758 (Wyo. 2019).[2]

---

[2] As a general rule, federal district courts only permit consistent statements into evidence if they were made prior to the alleged fabrication or improper influence or motive. *Griggs*, ¶ 105, 367 P.3d at 1137.

[¶46]  With the above in mind, we proceed to our discussion of Exhibit 1.

### a. Exhibit 1B – Shower Incident

[¶47]  Again, Mr. Torres does not argue Exhibit 1B did not meet the test for a prior consistent statement under W.R.E. 801(d)(1)(B).  Instead, while he acknowledges it was a prior consistent statement, he asserts it was irrelevant.  He also argues it was cumulative and unduly prejudicial under W.R.E. 403.  In terms of relevance, Mr. Torres asserts the State's proffered reason for seeking to admit the excerpt was so the jury could observe that the demeanor of the victim was improper.  In arguing the exhibit was cumulative and unduly prejudicial, he appears to argue the State was "piling on," since Ms. Stenquist already testified as to what GT said during the interview.

### i.    Relevance

[¶48]  We have acknowledged W.R.E. 801(d)(1)(B) is susceptible to abuse in that it may be used as "'a tool for impermissible trial tactics by having a victim repeat accusations to authority figures for the direct purpose of using those statements later at trial as prior consistent statements.'"  *Griggs,* ¶ 111, 367 P.3d at 1139 (quoting *Tombroek v. State,* 2009 WY 126, ¶¶ 14-15, 217 P.3d 806, 811-12 (Wyo. 2009)).  Thus, district courts must admit this type of testimony with caution, and only after considering why the interviews occurred and the probative value of admitting such evidence.  *Tombroek*, ¶ 14, 217 P.3d at 812 (citing *Seward v. State,* 2003 WY 116, ¶ 16, 76 P.3d 805, 811–12 (Wyo. 2003)).  In *Tombroek,* we reiterated that, upon a proper objection, district courts:

> [S]hould consider whether having numerous authority figures trained to recognize sexual abuse appear at trial is actually a trial strategy of preparing a multitude of self-serving, biased, inflammatory, video, audio, and written statements for trial; having the witness testify; and then introducing into evidence these consistent statements made prior to testifying.

*Tombroek,* ¶ 14, 217 P.3d at 811 (quoting *Seward*, ¶ 16, 76 P.3d at 811-812).

[¶49]  We found those concerns did not exist in *Tombroek*, as the victim "made her statements to the witnesses in a manner that would be expected from a victim in the early stages of a typical sexual assault investigation, rather than in a manner resembling trial preparation tactics . . . ."  *Id.,* ¶ 14, 217 P.3d at 812.  We said the same thing in *Munda v. State,* 2023 WY 90, ¶¶ 29, 32, 535 P.3d 523, 530-31 (Wyo. 2023), where we held the district court did not abuse its discretion when it permitted a detective to testify about a victim's disclosures initially made during a forensic interview and a follow-up interview days later.

11

[¶50]   In this case, GT and Ms. Stenquist both testified about the shower incident.  Exhibit 1B was then admitted.  While Mr. Torres argues it was irrelevant because the State offered it as evidence of "demeanor," it is clear from the circumstances leading up to its admission that the State was offering it as a prior consistent statement for the limited purpose of rehabilitating GT's credibility.   The interview took place in the early stages of the investigation, even before the Green River police became involved—as would be expected in the early stages of a sexual assault investigation.  Because GT's credibility was central to Mr. Torres' defense, Exhibit 1B was properly admitted for the purpose of rehabilitating GT.  It was therefore not irrelevant.

### ii.        *Cumulative/Undue Prejudice*

[¶51]   Under Rule 403, even "relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."   As a result, a district court can exclude an otherwise admissible prior consistent statement that meets one of those criteria.  However, as we have cautioned, Rule 403 "is to be used sparingly, because it excludes evidence which is concededly relevant and probative." *Bittleston,* ¶ 43, 442 P.3d at 1298 (citations and quotation omitted).

[¶52]   The appellant bears the burden of demonstrating "the evidence admitted had little or no probative value and that it was extremely inflammatory or introduced for the purpose of inflaming the jury." *Munda,* ¶ 21, 535 P.3d at 528 (citations omitted).  So long as there was a legitimate basis to admit evidence over a Rule 403 objection, this Court will not overturn a district court. *Id.*

[¶53]   With these standards in mind, we find that the district court reasonably admitted Exhibit 1B over Mr. Torres' Rule 403 objection.  Although Ms. Stenquist testified as to her conversation with GT about the shower incident, the videotape gave the jury the opportunity to directly assess GT's credibility when he shared his account with Ms. Stenquist.  Thus, and while some of 1B was repetitive, it was not unnecessarily so, and served a specific purpose different from Ms. Stenquist's testimony.  This was not an instance where the State was "piling on" by having multiple witnesses repeat what GT told them. *See, e.g., Wilde v. State*, 2003 WY 93, ¶ 14, 74 P.3d 699, 708 (Wyo. 2003) (finding the district court erred in permitting five witnesses to testify as to what a victim told them about a sexual assault).

[¶54]   In addition, Mr. Torres has not carried his burden to show there was substantial prejudice from the admission of Exhibit 1B.  While Mr. Torres makes conclusory assertions of prejudice, he provides no further explanation or argument other than asserting the evidence was repetitive. Moreover, it is difficult to see how Exhibit 1B could have inflamed the jury, since when it was admitted GT had already testified in person

12

about the incident that occurred in the family bathroom. Exhibit 1B also was not admitted as substantive evidence. The district court instructed the jury to only consider the prior consistent statements "for the limited purpose of evaluating the credibility of [GT]" "and [that they] should not be considered directly as proof of the matters asserted." S*ee also, Griggs*, ¶ 91, 367 P.3d at 1135. Mr. Torres has not demonstrated that the admission of Exhibit 1B was unduly prejudicial.

[¶55] The district court did not abuse its discretion in admitting Exhibit 1B as a prior consistent statement and over Mr. Torres' objections pursuant to Rule 403.

### b. Exhibit 1E – Christmas Day Incident

[¶56] Mr. Torres challenges Exhibit 1E, GT's description of the Christmas Day incident, alleging it is not sufficiently consistent with his trial testimony to qualify as a prior consistent statement under Rule 801(d)(1)(B). Specifically, Mr. Torres claims Exhibit 1E included details that GT did not testify about at trial. The district court determined the two were not "materially different"—a determination that we find was not an abuse of discretion based upon our review of the record.

[¶57] Rule 801(d)(1)(B) expressly requires a statement be consistent with trial testimony. It does not require a statement be identical, so long as "no material difference exists between the two accounts." *Maier v. State,* 2012 WY 50, ¶ 12, 273 P.3d 1084, 1088 (Wyo. 2012) (quoting *Curl v. State*, 898 P.2d 369, 374, 375 (Wyo.1995)). "It is the consistency, rather than the substance of the consistent statement, which takes such a statement out of the realm of objectionable hearsay and tends to prove the value of the original statement." *Maier,* ¶ 12, 273 P.3d at 1087 (quoting *Lancaster v.* State, 2002 WY 45, ¶ 17, 43 P.3d 80, 88-89 (Wyo. 2002) (other quotation omitted)). Prior consistent statements may not be used to prove new points or fill in gaps the declarant's testimony did not cover. *Hilyard v. State,* 2023 WY 13, ¶ 26, 523 P.3d 936, 942 (Wyo. 2023), *cert. denied,* 144 S.Ct. 236 (2023) (citing *Griggs,* ¶ 100, 367 P.3d at 1136; *Martin v. State,* 2007 WY 76, ¶ 29, 157 P.3d 923, 930 (Wyo. 2007).

[¶58] While it is true GT's statement in Exhibit 1E included ancillary details he did not provide at trial, including the size of the TV, the presence of Pittsburgh Steelers decorations, and what GT and Mr. Torres were wearing, that is not enough to disqualify 1E as a prior consistent statement. None of those details were material to GT's description of the abuse he suffered and to which he consistently testified in both Exhibit 1E and at trial.

[¶59] In addition, Mr. Torres' assertion that GT recalled Mr. Torres' erection in Exhibit 1E but not at trial does not take Exhibit 1E outside the realm of a prior consistent statement. During trial, GT testified about sitting in the basement, being on the basement couch, and how he and Mr. Torres "masturbate[ed] each other … for several minutes."

13

While GT did not specifically testify to Mr. Torres' erection, the testimony about the sexual abuse that occurred in the basement was generally consistent. Exhibit 1E did not transform vague testimony into specific allegations or prove new points, and no material difference existed between the two accounts.

[¶60] The district court did not abuse its discretion in admitting Exhibit 1E as a prior consistent statement under Rule 801(d)(1)(B).

### c. *Exhibit 1K – Physical Description of Mr. Torres*

[¶61] Finally, Mr. Torres contends the district court erred in admitting Exhibit 1K because it was too inconsistent to serve as a prior consistent statement under Rule 801(d)(1)(B). In Exhibit 1K, GT describes Mr. Torres' naked body and genitals to Ms. Stenquist. The district court concluded Exhibit 1K and GT's trial testimony, although not identical, were consistent enough to satisfy the requirements of Rule 801(d)(1)(B).

[¶62] Once again, and while GT's statements to Ms. Stenquist and his testimony at trial were not identical, the two were sufficiently consistent. At trial GT testified in detail about Mr. Torres' body, including muscularity and certain features of his genitalia including hair, coloration, and a scar or line. During his forensic interview, he mentioned many of the same things although there were minor discrepancies (e.g., scar v. scab). While GT mentioned separate markings during the forensic interview that he did not mention at trial, that does not make the two inconsistent. GT's statements in Exhibit 1K did not fill in any gaps from his trial testimony and, though not identical, were sufficiently similar to what he said at trial. *See Griggs,* ¶¶ 101-103, 367 P.3d at 1137 (holding a prior consistent statement was admissible when a forensic interviewer testified to statements children made to her, though the interviewer used the word "crotch," and the children testified using the terms "bad area" and "private spot.").

[¶63] The district court did not abuse its discretion in admitting Exhibit 1K as a prior consistent statement under Rule 801(d)(1)(B).

### d. *Material Prejudice*

[¶64] Even if the district court had erred in admitting Exhibit 1B, 1E, or 1K into evidence, Mr. Torres bears the burden to show material prejudice resulted. *Munda,* ¶ 21, 535 P.3d at 528. An error is prejudicial if there is a reasonable probability the verdict would have been more favorable to the appellant had the error not occurred. *Swett v. State*, 2018 WY 144, ¶ 12, 431 P.3d 1135, 1140 (citing *Bustos v. State,* 2008 WY 37, ¶ 9, 180 P.3d 904, 907 (Wyo. 2008) and *Burton v. State,* 2002 WY 71, ¶ 12, 46 P.3d 309, 313 (Wyo. 2002)).

[¶65] While Mr. Torres asserts undue prejudice in the context of his Rule 403 analysis, he does not make any argument or include any relevant case law regarding material

prejudice in the context of analyzing whether the district court's alleged errors affected the outcome of the trial. More succinctly, he includes no assertion or argument that there was a reasonable probability the verdict would have been more favorable to him had the error not occurred. *Swett*, ¶ 12, 431 P.3d at 1140. As a result, we need not even consider the issue of material prejudice. *Snyder v. State*, 2015 WY 91, ¶ 15 n.1, 353 P.3d 693, 695 n.1 (Wyo. 2015).

[¶66] Even so, the record demonstrates little to no probability of a different verdict if the district court had excluded Exhibits 1B, 1E, and 1K, which were not used as substantive evidence. GT testified extensively and in graphic detail about the numerous instances of abuse he suffered. Photographs of Mr. Torres' genitals were admitted into evidence to corroborate GT's testimony regarding his observations of distinguishing characteristics of Mr. Torres' genitals. Ms. Torres testified about GT telling her that Mr. Torres hurt him sexually and raped him. Law enforcement testified about the details of the investigations they conducted that led to Mr. Torres' arrest, including interviews with Mr. Torres and GT and the observations from those interviews.

[¶67] In short, even if it had been error to admit Exhibits 1B, 1E, and 1K, Mr. Torres failed to carry his burden to demonstrate he suffered material prejudice.

## CONCLUSION

[¶68] The district court did not abuse its discretion when it allowed the State to amend its Information prior to trial, or when it admitted the challenged portions of Exhibit 1.

[¶69] Affirmed.